## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ARCHDIOCESE OF WASHINGTON, Donald Cardinal Wuerl, a Roman Catholic Archbishop of Washington, a corporation sole,** 5001 Eastern Avenue Hyattsville, MD 20782,<br><br>Plaintiff,<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, an interstate compact government agency,** 600 Fifth Street, NW Washington, DC 20001; and<br><br>**PAUL J. WIEDEFELD, in his official capacity as General Manager of the Washington Metropolitan Area Transit Authority,** 600 Fifth Street, NW Washington, DC 20001,<br><br>Defendants. | **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Case: 1:17-cv-02554<br>Assigned To : Jackson, Amy Berman<br>Assign. Date : 11/28/2017<br>Description: TRO/PI    **(D-DECK)** |

Plaintiff the Archdiocese of Washington (hereinafter referred to as the "Archdiocese") respectfully submits this motion for a preliminary injunction declaring that Defendants the Washington Metropolitan Area Transit Authority ("WMATA") and Paul J. Wiedefel, in his official capacity as General Manager of WMATA, violated the Archdiocese's constitutional and statutory rights when they rejected the Archdiocese's request to advertise its "Find the Perfect Gift" campaign on the exterior of WMATA's public buses and enjoining Defendants to permit the Archdiocese to advertise its campaign as requested. The Archdiocese also moves for a temporary restraining order to ensure meaningful judicial review of its motion for a preliminary injunction and to prevent an imminent, irreparable injury to the Archdiocese's constitutional and

statutory rights caused by WMATA's actions.  The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities and the Declarations of Edward McFadden and Susan Timoney, S.T.D.  A proposed order is attached.


Dated:  November 28, 2017                              Respectfully submitted,


By: _____

                                                               Paul D. Clement, P.C.
                                                               paul.clement@kirkland.com
                                                               Michael F. Williams, P.C.
                                                               Megan M. Wold*
                                                               Kasdin M. Mitchell**
                                                               Joseph C. Schroeder***
                                                               KIRKLAND & ELLIS LLP
                                                               655 15th Street, NW
                                                               Washington, DC 20005
                                                               (202) 879-5000
                                                               *Admitted only in Ohio and supervised
                                                               by principals of the Firm.
                                                               **Admitted only in Alabama and
                                                               supervised by principals of the Firm.
                                                               ***Admitted only in Illinois and
                                                               supervised by principals of the Firm.

                                                               ATTORNEYS FOR PLAINTIFF
                                                               ARCHDIOCESE OF WASHINGTON,
                                                               DONALD CARDINAL WUERL,
                                                               ARCHBISHOP OF WASHINGTON

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 28th day of November 2017, he caused a true and

correct copy of the Motion for Temporary Restraining Order and Preliminary Injunction to be

served via Federal Express Overnight delivery and electronic mail upon the following:

Patricia Y. Lee
General Counsel
Washington Metropolitan Area Transit Authority
600 5th Street, NW
Washington, DC 20001

Rex S. Heinke
Akin Gump
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067-6022

_____

Paul D. Clement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ARCHDIOCESE OF WASHINGTON, Donald Cardinal Wuerl, Roman Catholic Archbishop of Washington, a corporation sole,** <br> 5001 Eastern Avenue <br> Hyattsville, MD 20782 <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, an interstate compact government agency,** <br> 600 Fifth Street, NW <br> Washington, DC 20001; and <br><br> **PAUL J. WIEDEFELD, in his official capacity as General Manager of the Washington Metropolitan Area Transit Authority,** <br> 600 Fifth Street, NW <br> Washington, DC 20001, <br><br> Defendants. | Case: 1:17-cv-02554 <br> Assigned To : Jackson, Amy Berman <br> Assign. Date : 11/28/2017 <br> Description: TRO/PI      **(D-DECK)** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................. 6

FACTUAL BACKGROUND................................................................................................. 7

ARGUMENT......................................................................................................................... 10

I.      The Archdiocese's Constitutional And Statutory Claims Are Likely To
        Succeed On Their Merits........................................................................................... 11

        A.      WMATA's No-Religious-Speech Policy Violates the Free Speech Clause
                of the First Amendment Because It Impermissibly Discriminates Based on
                Viewpoint............................................................................................................ 12

        B.      WMATA Applies Its No-Religious-Speech Policy Inconsistently and
                Arbitrarily, in Violation of the First and Fifth Amendments............................... 17

        C.      WMATA's Policy Also Violates the First Amendment's Free Exercise
                Clause................................................................................................................ 20

        D.      WMATA's Policy Violates Statutory Protections for Religious Exercise. ......... 22

II.     The Archdiocese's Harms Are Irreparable And Imminent, Requiring
        Temporary Relief....................................................................................................... 25

III.    Permitting The Archdiocese's Advertisements Will Not Harm WMATA. ............... 27

IV.     The Public Interest Favors Protection Of Constitutional Rights. ............................. 27

CONCLUSION ..................................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.N.S.W.E.R. Coal. v. Kempthorne*,
   537 F. Supp. 2d 183 (D.D.C. 2008) ..........................................................................................15

*Abdah v. Bush*,
   No. Civ. A. 04–1254(HHK), 2005 WL 711814 (D.D.C. Mar. 29, 2005)................................22

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ..............................................................................................22

*Bd. of Educ.of Kirvas Joel Vill. Sch. Dist. v. Grumet*,
   512 U.S. 687 (1994)................................................................................................................14

*Boardley v. U.S. Dep't of Interior*,
   516 F.3d 508 (D.C. Cir. 2010)..................................................................................................8

*Bolling v. Sharpe*,
   347 U.S. 497 (1954)................................................................................................................15

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. __, 134 S. Ct. 2751 (2014)......................................................................................18

*Carey v. Brown*,
   447 U.S. 455 (1980)..................................................................................................................8

*Carey v. Fed. Election Comm'n*,
   791 F. Supp. 2d 121 (D.D.C. 2011)........................................................................................21

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993)..........................................................................................................16, 19

*Cmty. for Creative Non-Violence v. Turner*,
   893 F.2d 1387 (D.C. Cir. 1990)................................................................................................8

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
   473 U.S. 788 (1985)..................................................................................................................9

*Dimondstein v. Am. Postal Workers Union*,
   964 F. Supp. 2d 37 (D.D.C. 2013)..........................................................................................21

*Elrod v. Burns*,
   427 U.S. 347 (1976)................................................................................................................20

ii

*Employment Div., Dep't of Human Res. of Or. v. Smith,*
  494 U.S. 872 (1990)..................................................................................................................15

*Freedberg v. U.S. Dep't of Justice,*
  703 F. Supp. 107 (D.D.C. 1988)..............................................................................................22

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
  23 F.3d 1071 (6th Cir. 1994) ..................................................................................................22

*Gonzales v. O Centro Espirita Beneficente Uniao*
  *do Vegetal,* 546 U.S. 418 (2006)............................................................................................20

*Good News Club v. Milford Cent. Sch.,*
  533 U.S. 98 (2001)............................................................................................................8, 9, 16

*Holt v. Hobbs,*
  135 S. Ct. 853 (2015)........................................................................................................18, 19

*Hopper v. City of Pasco,*
  241 F.3d 1067 (9th Cir. 2001) ................................................................................................12

*Jackson v. District of Columbia,*
  254 F.3d 262 (D.C. Cir. 2001)................................................................................................17

*Johnson v. Local 1199, Hosp. & Health Care Employees Union,*
  1986 WL 166 (S.D.N.Y. Jan. 31, 1986) .................................................................................21

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,*
  508 U.S. 384 (1993)...................................................................................................................9

*Larson v. Valente,*
  456 U.S. 228 (1982).................................................................................................................14

*League of Women Voters v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016)......................................................................................................5

*Lee v. Weisman,*
  505 U.S. 577 (1992).................................................................................................................14

*Let's Help Florida v. McCrary,*
  621 F.2d 195 (5th Cir. 1980), *aff'd sub nom. Firestone v. Let's Help Florida,*
  454 U.S. 1130 (1982)...............................................................................................................21

*Lofton v. District of Columbia,*
  7 F. Supp. 3d 117 (D.D.C. 2013) ............................................................................................22

*McDaniel v. Paty,*
  435 U.S. 618 (1978).................................................................................................................16

*O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,*
   389 F.3d 973 (10th Cir. 2004) ...................................................................................................20

*People for the Ethical Treatment of Animals v. Giuliani,*
   105 F. Supp. 2d 294 (S.D.N.Y. 2000)......................................................................................12

*Pleasant Grove City v. Summum,*
   555 U.S. 460 (2009)....................................................................................................................8

*Police Dep't of City of Chicago v. Mosley,*
   408 U.S. 92 (1972)....................................................................................................................15

*Potter v. District of Columbia,*
   558 F.3d 542 (D.C. Cir. 2009)..................................................................................................18

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992)....................................................................................................................7

*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.,*
   823 F. Supp. 2d 36 (D.D.C. 2011)............................................................................................20

*Rosenberger v. Rector & Visitors of University of Va.,*
   515 U.S. 819 (1995)...........................................................................................................*passim*

*Sanders Cnty. Republican Cent. Comm. v. Bullock,*
   698 F.3d 741 (9th Cir. 2012) ....................................................................................................21

*Simms v. District of Columbia,*
   872 F. Supp. 2d 90 (D.D.C. 2012)............................................................................................22

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   137 S. Ct. 2012 (2017)..............................................................................................................16

*Tyndale House Publishers, Inc. v. Sebelius,*
   904 F. Supp. 2d 106 (D.D.C. 2012)..........................................................................................20

*United States v. Grace,*
   461 U.S. 171 (1983)....................................................................................................................8

*Zorach v. Clauson,*
   343 U.S. 306 (1952)..................................................................................................................11

**Statutes**

42 U.S.C. § 2000bb-1 ...................................................................................................................17

42 U.S.C. § 2000bb-1(a)................................................................................................................17

42 U.S.C. § 2000bb-2(4)................................................................................................................18

42 U.S.C. §§ 2000bb to 2000bb-4 .................................................................................................17

42 U.S.C. § 2000cc-5(7) ...............................................................................................................18

D.C. Code § 9-1107.01 .................................................................................................................18

## INTRODUCTION

The Washington Metro Area Transit Authority ("WMATA") accepts a wide variety of advertisements for display on the exterior of its public buses, but not advertisements that promote (or oppose) religion or reflect a religious perspective. Citing this no-religious-speech policy, WMATA denied the Archdiocese of Washington's (the "Archdiocese") request to advertise its "Find the Perfect Gift" campaign during the season of Advent. The Archdiocese's proposed advertisements feature the silhouette of three shepherds and the text: "Find the Perfect Gift." The advertisements are part of a larger campaign to encourage individuals to return to church during Advent and to give charitably in their communities. Although WMATA's advertising guidelines would permit non-religious messages about Christmas, including commercial messages about material Christmas gifts, secular seasonal fund-raising campaigns, and virtually any message emphasizing the commercial aspects of the holiday season, WMATA refused the Archdiocese's effort to emphasize the religious reason for the season and to deliver a message about the opportunities to return to church during the Advent and Christmas seasons solely because of the message's religious nature and the Archdiocese's religious views. The First Amendment prohibits WMATA's effort to disfavor religious speech and religion.

The First Amendment protects the Archdiocese's rights to free speech and free exercise of religion and forecloses WMATA's effort to limit messages on the exterior of buses on public thoroughfares to the commercial aspects of the season. The critical time for the Archdiocese's message about Advent, and for the cacophony of advertisements focusing on the commercial aspect of the season, is now. For that reason, the Archdiocese seeks an immediate TRO and preliminary injunction to prevent WMATA from applying its no-religious-speech policy to the Archdiocese's Advent campaign in violation of its constitutional rights. The First Amendment rights of the Archdiocese and the need for this Court's immediate intervention are both clear.

The Archdiocese satisfies the four-part test for immediate injunctive relief. The Archdiocese is overwhelmingly likely to succeed on the merits of its constitutional claims, as WMATA's prohibition on religious speech suffers multiple constitutional defects: WMATA's no-religious-speech policy impermissibly discriminates on the basis of viewpoint, and at best constitutes unreasonable content-based discrimination; the policy's arbitrary enforcement violates free speech principles and discriminates among religious viewpoints in violation of the Establishment Clause; and it impermissibly burdens the Archdiocese's free exercise rights under the Constitution and RFRA. By violating these constitutional rights and preventing the Archdiocese's message from reaching critical communities during the relevant season, the policy causes irreparable injury. WMATA suffers no countervailing injury and indeed would affirmatively profit if the advertisements are allowed to run. Finally, the public interest plainly favors having more and more balanced speech that equally emphasizes the commercial and religious aspects of the season and removes WMATA from an ill-suited role as religious censor.

Further proceedings will allow a full accounting of the arbitrary manner in which WMATA has administered its no-religious-speech policy, but interim injunctive relief will protect the Archdiocese's constitutional rights and promote the public interest while this litigation proceeds.

## FACTUAL BACKGROUND

The Archdiocese's "Find the Perfect Gift" campaign, which it began developing in the spring of 2017, aims to "share a simple message of hope, welcoming all to Christmas Mass or in joining in public service to help the most vulnerable in our community during the liturgical season of Advent," in which Christians prepare to celebrate the birth of Christ. McFadden Decl. ¶3. Advent begins on December 3, 2017. *Id.*

As a critical element of the "Find the Perfect Gift" campaign, the Archdiocese created advertisements to display in public spaces, social media, and on the Internet. *Id.* ¶¶4-7. The advertisements generally depict a minimalist scene: a starry night, the golden silhouettes of shepherds and sheep on a hill, and the words "Find the Perfect Gift." *Id.* ¶4. They also display a website address and social media hashtag for the campaign. *Id.* The Archdiocese has successfully placed these "Find the Perfect Gift" advertisements in parish bulletins throughout the Archdiocese and on public transit shelters, for which Clear Channel Outdoor sells advertising space pursuant to a 20-year contract with the District of Columbia. *Id.* ¶8. Yet when the Archdiocese submitted "Find the Perfect Gift" advertisements for the backs and sides of WMATA buses, WMATA refused to run the ads. *Id.* ¶¶11-15.

In order to purchase advertising space for the "Find the Perfect Gift" campaign, the Archdiocese contacted WMATA through WMATA's third-party advertising vendor, Outfront Media, on October 23, 2017. *Id.* ¶11. The next day, Outfront Media spoke with an Archdiocese representative on the phone and indicated that the proposed advertisements would not comply with WMATA's guidelines for permissible advertising sales. *Id.* ¶12. Outfront Media explained that the advertisements would be *more* likely to comply with WMATA's guidelines if they advertised an explicitly commercial objective, like selling tickets to an event or selling products to consumers. *Id.* But because the ads merely referred to finding the perfect gift without asking for business, they were impermissible under WMATA's guidelines. *Id.* ¶12.

The Archdiocese could not conceive of a way to adjust its ads to both comply with WMATA's guidelines and still advance the purpose and message of the campaign, so it requested an appeal. *Id.* ¶12-13. Outfront Media responded that "WMATA denied the ad copy to run on buses unfortunately." *Id.* ¶14. The Archdiocese then asked, through outside counsel,

8

to meet with WMATA to discuss the rejection of the "Find the Perfect Gift" advertisements. *Id.*
¶15. The Archdiocese explained that WMATA's exclusion of its advertisements "raises serious
questions under the First Amendment and other applicable laws" and that "time is of the
essence" because the campaign would begin at the start of Advent just a few short weeks away.
Compl. ¶18. WMATA did not respond to this request until November 20, when, in a letter from
outside counsel, it denied the Archdiocese's "Find the Perfect Gift" ads (again) without even
acknowledging the request for an in-person meeting. *Id.* ¶19. WMATA explained that "the
Archdiocese's advertisement for 'FindThePerfectGift.org' is prohibited by [WMATA
Advertising] Guideline 12 because it depicts a religious scene and thus seeks to promote
religion." *Id.* WMATA's Guideline 12 states: "Advertisements that promote or oppose any
religion, religious practice or belief are prohibited." WMATA Advertising Guidelines, available
at http://bit.ly/2Afdq31 (last visited Nov. 27, 2017) (hereafter, "Guidelines").

WMATA's denial of the Archdiocese's ads has worked a serious, harmful effect on the
"Find the Perfect Gift" campaign. Public bus exteriors are a uniquely suitable forum for
advertising the Archdiocese's message because they reach the streets and sidewalks in all parts
of the city, including neighborhoods not easily reached by other forms of media. McFadden
Decl. ¶16; Timoney Decl. ¶¶6-7. The Archdiocese has been (and continues to be) injured so
long as its advertising campaign fails to launch in advance of the Advent season on the backs and
sides of WMATA buses. Timoney Decl. ¶¶6-7.

Meanwhile, WMATA's advertising guidelines permit numerous other types of
advertising on the backs and sides of buses, even ads addressing the same subjects about which
the Archdiocese seeks to communicate in its "Find the Perfect Gift" campaign. WMATA's
advertising guidelines prohibit advertisements "that support or oppose any political party or

candidate," "that are intended to influence public policy" or "that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser." Guidelines 11 14, 13. But the guidelines broadly permit commercial advertising, which means that commercially-oriented viewpoints are allowed in WMATA's bus-exteriors forum, just not religiously-oriented viewpoints, even when both views relate to the same season or subject matter. Moreover, under its current advertising guidelines, WMATA has run ads on bus exteriors that are inconsistent with the policy embodied in Guideline 12 as it was applied to the Archdiocese. For example, WMATA has run exterior bus ads for the Salvation Army's Christmas-related fundraising activities and for a yoga studio teaching yoga as an inner journey of self-discovery and a means of soul-to-soul communication. Compl. ¶24.

In light of the rationale WMATA proffered for its denial of the Archdiocese's ads, and in light of the ongoing injury the Archdiocese endures so long as that denial persists, the Archdiocese now brings this action to vindicate its constitutional free speech and free religion rights and seeks a temporary restraining order to provide immediate relief pending further legal proceedings.

## ARGUMENT

WMATA's no-religious-speech policy violates the First Amendment's speech and religion and the Fifth Amendment's due process and equal protection guarantees both on its face and as applied to the Archdiocese's "Find the Perfect Gift" campaign, and temporary injunctive relief is critical to protect the Archdiocese's constitutional rights while the matter is litigated. The Archdiocese readily satisfies all four factors for obtaining temporary injunctive relief: "likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016).

The merits of the Archdiocese's First Amendment claims are strong. If the Free Speech, Free Exercise, and Establishment Clauses mean anything, they ensure that government cannot exclude religious viewpoints from a forum when other viewpoints are allowed, nor pick and choose among the religious views it will advance. WMATA's no-religious-speech policy violates both of these essential principles: While WMATA welcomes paid advertising emphasizing the commercial nature of the season, it prevents the Archdiocese from running paid advertisements emphasizing the religious nature of the seasons, and by enforcing its no-religious-speech policy arbitrarily, WMATA picks and chooses among religious messages it will allow on buses permitting yoga advertisements, while deeming shepherds impermissibly evocative of a religious scene. These ongoing First Amendment violations irreparably injure the Archdiocese, and time is of the essence because both the Archdiocese's suppressed speech and the permitted competing speech are focused on the Advent and Christmas seasons. The balance of equities is not even close as WMATA suffers no countervailing harm and would actually financially benefit from the Archdiocese's paid campaign. Finally, the public interest favors speech and disfavors discrimination against religious viewpoints.

The Archdiocese asks this Court to enter temporary injunctive relief prohibiting WMATA from rejecting the Archdiocese's "Find the Perfect Gift" campaign while the litigation proceeds.

## I. The Archdiocese's Constitutional And Statutory Claims Are Likely To Succeed On Their Merits.

WMATA's no-religious-speech policy is antithetical to the First (and Fifth) Amendment, and the Archdiocese's constitutional claims are likely to succeed because WMATA's policy suffers at least six separate flaws. *First*, WMATA's policy unconstitutionally abridges the Archdiocese's free speech rights by prohibiting only *religious* viewpoints on the subject matter

11

that WMATA otherwise allows on bus exteriors.  This type of viewpoint discrimination is "censorship in its purest form" and violates the "bedrock principle" of the First Amendment. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 430-31 (1992).  At a bare minimum, WMATA's policy involves unreasonable content-based discrimination.  *Second*, WMATAs enforces its no-religious-speech policy arbitrarily by permitting some religious speech while excluding the Archdiocese's "Find the Perfect Gift" campaign, and such arbitrary enforcement violates the First Amendment's free speech guarantee.  *Third*, the same arbitrary enforcement problem violates the Establishment Clause because WMATA permits select religious views on bus exteriors and thereby favors some religious views over others.  *Fourth*, the arbitrary enforcement problem violates the Archdiocese's equal protection rights because similarly situated religious groups are able to advertise while the Archdiocese is not, with no rational basis for the distinction. *Fifth*, WMATA's no-religious-speech policy violates the Free Exercise Clause of the First Amendment because it excludes the Archdiocese from participating as a paid customer in a government program based solely on the Archdiocese's religious beliefs.  *Sixth*, WMATA's enforcement of its no-religious-speech policy against the Archdiocese violates RFRA because the enforcement substantially burdens the Archdiocese's exercise of religion without furthering a compelling government interest.  Because the Archdiocese is likely to succeed on at least one of these arguments—and ultimately on all six arguments considered together—it is overwhelmingly likely to succeed on the merits of its claims.

A.     **WMATA's No-Religious-Speech Policy Violates the Free Speech Clause of the First Amendment Because It Impermissibly Discriminates Based on Viewpoint.**

WMATA's exterior bus advertising involves speech in either a public forum or a limited public forum, and in either event the kind of viewpoint discrimination embodied in WMATA's no-religious-speech policy is constitutionally forbidden.    The D.C. Circuit has already

determined that WMATA subway stations are "public fora, either in traditional terms or by designation," *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1391 (D.C. Cir. 1990); see also *Boardley v. U.S. Dep't of Interior*, 516 F.3d 508, 520-21 (D.C. Cir. 2010), and the same is true, a fortiori, of the exterior displays of WMATA buses traversing the public streets. The exterior displays are directed to an audience in quintessential public forums:   motorists and pedestrians on public streets and sidewalks.   "Streets" and "sidewalks" are "so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely."   *Carey v. Brown*, 447 U.S. 455, 460 (1980).   Thus, whatever latitude the government may have in restricting speech directed to captive audiences within public buses, the government has considerable less flexibility in suppressing exterior advertisements viewed by the public in the most traditional of public forums.   In such public fora, the government may discriminate on neither the basis of viewpoint or content. *See United States v. Grace*, 461 U.S. 171, 177 (1983).

At an absolute minimum, WMATA's exterior bus displays constitute a limited public forum that WMATA has "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009).   And while a government has a slightly freer hand in limiting the topics for discussion in such a limited public forum, viewpoint discrimination remains verboten and content-based restrictions must be reasonable in light of the forum. *Id.*; *see also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) (same); *Rosenberger v. Rector & Visitors of University of Va.*, 515 U.S. 819, 829-30 (1995) (same).   Even under this more-permissive standard, WMATA's no-religious-speech policy is plainly unconstitutional because it discriminates against religious viewpoints and unreasonably banishes religious content from the forum.

13

The government impermissibly discriminates on the basis of viewpoint where, as here, it excludes a speaker from expressing "[a] point of view he espouses on an otherwise includible subject." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). When WMATA allows all manner of advertisements addressing commercial aspects of the holidays, its prohibition of an advertisement emphasizing the religious nature of the season is impermissible viewpoint discrimination. Even more broadly, the Supreme Court has made clear that discrimination against religious speech is viewpoint discrimination. No-religious-speech policies like WMATA's do not merely prohibit a category of speech with religious *content*; they prohibit speakers from expressing religious *viewpoints* even though non-religious viewpoints of the same subject matter are allowed. *Rosenberger*, 515 U.S. at 831 ("[r]eligion ... provides ... a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered."). A no-religious-speech policy therefore "selects for disfavored treatment" messages "with religious ... viewpoints" on subject matter otherwise permitted in the forum and is an impermissible viewpoint-based regulation of speech. *Id.* The U.S. Supreme Court has routinely invalidated religion-excluding policies like WMATA's. *Good News Club*, 533 U.S. at 109 (invalidating a no-religion policy that "otherwise permitted ... the teaching of morals and character" but not "from a religion standpoint"); *Rosenberger*, 515 U.S. at 831 (invalidating a no-religion policy because it excluded the "prohibited [religious] perspective"); *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392-93 (1993) (invalidating a no-religion policy that allowed "the presentation of all views about family issues and child rearing except those dealing with the subject matter from a religious standpoint").

By excluding the Archdiocese's "Find the Perfect Gift" campaign pursuant to its no-religious-speech policy, WMATA has prohibited the Archdiocese from expressing its view on at

14

least two subjects that WMATA otherwise allows to be addressed on exterior bus displays. First, the Archdiocese's campaign expresses the view that the "perfect gift" during the Christmas season is devotion to God and service to others. WMATA's advertising guidelines permit *other* messages that promote Christmas gifts in the form of commercial sales and secular gift-giving. By forbidding the Archdiocese's religious views to be expressed equally in the forum, WMATA has privileged non-religious viewpoints over religious viewpoints, in violation of the First Amendment. Second, the Archdiocese's campaign expresses the view that Christians should engage in charitable acts as an expression of the Christian faith. WMATA allows non-religious advertising of charitable causes by organizations that promote charitable acts for non-religious reasons. By excluding the Archdiocese's message that viewers should contribute charitably to others as Christians, WMATA has chosen secular viewpoints over religious viewpoints, in violation of the First Amendment. On both of these topics, WMATA's advertising guidelines exclude the Archdiocese's message on an otherwise-includible subject merely because the Archdiocese promotes a religious view. That makes WMATA's no-religious-speech policy viewpoint discriminatory and impermissible under the First Amendment.[1]

Even if WMATA's no-religious-speech policy could be construed as content-based discrimination, rather than viewpoint discrimination (and it cannot be), it would still fail to satisfy the First Amendment's demands because such a wholesale banishment of religious content is contrary to our constitutional tradition and unreasonable in light of the purpose that WMATA's exterior-bus-display forum serves. *See Rosenberger*, 515 U.S. at 829-30 (a content-

---

[1]    The fact that WMATA purports to prohibit advertisements that "promote or oppose any religion, religious practice or belief" does not render the policy viewpoint neutral. By completely prohibiting all religious perspectives, whether promoting or opposing a particular religion or religious practice, WMATA banishes all religious perspectives from the forum and discriminates in favor of secular and commercial viewpoints. *See, e.g., Rosenberger*, 515 U.S. at 829-31.

based speech restriction may be permissible in a limited public forum only where it "preserves the purposes of that limited forum"). The Constitution sets forth a policy of government toleration of religion and religious speech. When the government accommodates religious speech and religion "it follows the best of our traditions." *Zorach v. Clauson*, 343 U.S. 306, 313-14 (1952). Categorically forbidding religious speech from a forum open to a wide-variety of secular and commercial speech is antithetical to those traditions and unreasonable.

The only purpose that WMATA has *arguably* identified is the general purpose outlined by WMATA staff in the Board minutes adopting the advertising guidelines: to exclude issue-oriented advertising that could provoke community discord, create concern about discriminatory statements, and generate potential threats to safety and security. Compl. ¶22. WMATA's no-religious-speech policy in general, and its exclusion of the Archdiocese's "Find the Perfect Gift" campaign in particular, bear no reasonable relation to that purpose. Religious viewpoints do not carry an inherently greater risk of provoking community discord, creating concern about discriminatory statements, and generating safety threats as compared to commercial advertisements. Messages encouraging individuals to attend mass or confession are not inherently more divisive than messages encouraging individuals to attend concerts or to shop. The Archdiocese has sought to convey a message of hope and charity for the Christmas season, and it has done so with a simple image of shepherds in the night. Commercial advertising for concerts and shopping, let alone alcohol or online hook-up forums (both permitted by WMATA's guidelines) are certainly no *less* likely to generate discord and safety concerns than the innocuous message the Archdiocese seeks to convey. Thus, even on the assumptions most favorable to WMATA—that exterior advertisements directed to an audience on public

16

thoroughfares are a limited public forum and that WMATA's no-religious-speech policy discriminates on content, not viewpoint—its policy still violates the First Amendment.

**B.    WMATA Applies Its No-Religious-Speech Policy Inconsistently and Arbitrarily, in Violation of the First and Fifth Amendments.**

Even setting aside the inherent constitutional problems with its no-religious-speech policy, WMATA has exacerbated its constitutional difficulties by applying the policy in an arbitrary and unreasonable way. The Supreme Court has emphasized that once a governmental entity "has opened a limited public forum," it "must respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829; see also *Hopper v. City of Pasco*, 241 F.3d 1067, 1076 (9th Cir. 2001) ("[C]onsistency in application is the hallmark of any policy designed to preserve the non-public status of a forum."); *People for the Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 322 (S.D.N.Y. 2000) ("[A]bsent objective criteria to guide decision makers, the measure of reasonableness of broadly worded restrictions is not so much the objective precision of the language describing the guidelines as *the way the state officials adhere to them, as indicated by the government's demonstration of overall consistency, non-discrimination, and good faith* ...." (emphasis added)). Inconsistent or arbitrary enforcement of the policy violates the rejected speaker's free speech rights.

WMATA has either wholly disregarded its policy in favor of preferred speakers or is applying the policy arbitrarily. As one example, WMATA has permitted the Salvation Army to advertise its Red Kettle campaign, which is its flagship Christmas fundraising effort, on exterior bus displays. It is hard to see how the no-religious-speech policy allows WMATA to permit the Salvation Army's advertisement while compelling it to reject the Archdiocese's "Find the Perfect Gift" campaign.  Both the Archdiocese and the Salvation Army are Christian organizations. Compare Timoney Decl. ¶¶4-6, with Our Mission Statement, Salvation Army,

17

http://bit.ly/2zJygtg (last visited Nov. 27, 2017) ("The Salvation Army is an evangelical part of the universal Christian Church. Our message is based on the Bible, our ministry is motivated by the love of God, and our mission is to preach the gospel of Jesus Christ as we meet human needs in His name without discrimination.") (last visited Nov. 22, 2017). And both campaigns present a charity-focused view of the Christmas season. Compare Timoney Decl. at ¶6, with Red Kettle History, Salvation Army, http://bit.ly/2AhdmzE (last visited Nov. 27, 2017) (describing the goal of raising money for the poor during the Thanksgiving and Christmas season).

Likewise, WMATA has approved an advertisement for CorePower Yoga, which teaches yoga practice with religious origins. CorePower promotes yoga as a mechanism to "take you on an inner journey of self-discovery," to "discover your power and purpose," lead to the "acknowledgment of one soul to another," and to "fully unit[e] the body, mind and spirit." See Frequently Asked Questions, CorePower Yoga, http://bit.ly/2zuUqfC (last visited Nov. 27, 2017). It is hard to see how a consistent interpretation of a no-religious-speech policy can find room for the Salvation Army and CorePower Yoga while closing the door on the Archdiocese.

The fact that WMATA permits the advertisements from the Salvation Army and CorePower Yoga but not the advertisement from the Archdiocese underscores that WMATA's application of its no-religious-speech policy *actually* discriminates against some religious viewpoints in favor of other religious viewpoints. While some religious organizations promote holiday charity with red kettles, other prefer contributions to the poor box and contributions to targeted campaigns that are integrated with worship. While some religious organizations seek an individual's "purpose" and "soul" in scripture and organized prayer, others seek such matters in meditation and physical rituals. That diversity of views and approaches is all well and good. But while religious organizations are expected to take sides in such debates, the government is

not.   The only proper posture for the government is neutrality.   By allowing some of these messages and not others, WMATA has placed itself in an untenable position.   Its policy reflects either intentional favoritism of some religious speakers over other or random arbitrariness. Neither is constitutionally permissible.

Indeed, WMATA's no-religious-speech policy as currently (arbitrarily) enforced raises serious Establishment Clause problems, which constitute yet another constitutional basis for invalidating the policy.   As the Free Exercise Clause prohibits government *pro*scriptions of religion, so the Establishment Clause prohibits government *pre*scriptions of religion.   *Lee v. Weisman*, 505 U.S. 577, 589 (1992) ("The First Amendment's Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State.").   Here, WMATA has placed itself in the position of a religious arbiter, deciding what religious groups or denominations are religious enough to be excluded by the policy, and which religious groups are sufficiently inoffensive that they may be allowed.   The prospect of WMATA officials and their outside counsel reviewing advertisements to determine whether shepherds are too religious, while red kettles and reindeer are permissible, is not one the First Amendment welcomes.   Rather WMATA's practice violates "[t]he clearest command of the Establishment Clause": that "one religious denomination cannot be officially preferred over another."   *Larson v. Valente*, 456 U.S. 228, 244 (1982); *see also Bd. of Educ.of Kirvas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) (the "principle at the heart of the Establishment Clause" is "that government should not prefer one religion to another").   Accordingly, even if WMATA's arbitrary enforcement of its no-religious-speech policy does not violate the Free Speech Clause, it violates the Establishment Clause, and the Archdiocese is entitled to immediate relief on that basis.

Even setting aside the First Amendment, WMATA's arbitrary enforcement of its no-religious-speech policy denies the Archdiocese its constitutional right to equal protection of the laws. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (applying equal protection principles to the District of Columbia through the Fifth Amendment). Although "the equal protection claim in this case is closely intertwined with First Amendment interests," the equal protection guarantee carries independent force. *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Under equal protection principles, "[o]nce a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say." *A.N.S.W.E.R. Coal. v. Kempthorne*, 537 F. Supp. 2d 183, 196 (D.D.C. 2008) (internal quotation marks omitted).

Applying even the lowest level of constitutional scrutiny to WMATA's policy, it clearly violates the Archdiocese's equal protection rights. WMATA has granted the Salvation Army the use of public buses to advertise its Christmas charity campaign, while denying the Archdiocese the same forum for similar speech. There is no rational basis for this differing treatment. Moreover, just as "selective exclusions from a public forum may not be based on content alone" for purposes of the First Amendment, they also "may not be justified by reference to content alone" for purposes of equal protection. *Mosley*, 408 U.S. at 96. The Court should issue temporary injunctive relief on the independent basis that WMATA's policy violates the Archdiocese's equal protection rights.

### C. WMATA's Policy Also Violates the First Amendment's Free Exercise Clause.

Even if WMATA's policy were a permissible restriction on free speech, its express discrimination against religion is independently problematic under the First Amendment's Free Exercise Clause. Because the policy implicates both free speech *and* free exercise, it is a

"hybrid" restriction subject to heightened scrutiny. *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 882 (1990). WMATA thus has the burden of showing that its intrusion on religion is "justified by a compelling interest and is narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-34 (1993). And when a restriction "den[ies] a generally available benefit solely on account of religious identity," that restriction "imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quoting *McDaniel v. Paty*, 435 U.S. 618, 628 (1978) (plurality opinion)).

WMATA's policy does not satisfy this high standard. The policy expressly prohibits religious advertisements, and it does so even if they otherwise conform to every other aspect of the guidelines. Those guidelines protect a host of government interests, such as promoting public safety (guideline 5) and honest advertising (guidelines 1 and 3) and preventing the unauthorized suggestion of government endorsement (guidelines 7 and 8). WMATA Advertising Guidelines, http://bit.ly/2Afdq31. There is no remaining justification for this discrimination against religion and religious speech. Unlike many of the Supreme Court's cases involving discrimination against religious speakers, there is no conceivable Establishment Clause problem for WMATA to avoid. The Archdiocese seeks not government funding for printing costs nor government-funded forums, but to pay WMATA the going rate for its seasonal advertisements.

The injury to the Archdiocese's free exercise right is especially acute in these circumstances. Unlike groups that have sought access to a forum, as in *Good News Club*, 533 U.S. at 103 (club meeting on school property), or access to funding, as in *Rosenberger*, 515 U.S.

21

at 827 (school newspaper funding), the Archdiocese is willing to pay for the advertising space at issue here. Moreover, the advertising space is crucial to the success of its "Find the Perfect Gift" campaign. As the top communications official for the Archdiocese explained, the forum is "critically important" to the campaign, as there are "few (if any) public forums that are better suited" for communicating the campaign's message. McFadden Decl. ¶ 9. The bus advertisements uniquely "provide inroads into communities that are important intended audiences for the Find the Perfect Gift campaign, including communities that are on the periphery of the population centers." *Id.* Even WMATA embraces the visibility and reach of its bus advertisement space. As its advertising vendor has explained, "[w]hen it comes to visibility, reach, and frequency, no other media type matches th[e] DC market coverage" of public buses, which offer "high visibility with consistent daily views." *Id.* ¶10, Exh. 7. The advertisements are also highly effective—"[b]ig, bold, in your face every day," but "not an obtrusive medium." *Id.* By denying the Archdiocese access to this important advertising space, the Archdiocese has suffered a distinct free exercise injury that warrants immediate relief.

### D.  WMATA's Policy Violates Statutory Protections for Religious Exercise.

Even if WMATA can demonstrate that its policies do not offend the Constitution's Free Exercise protection, the Archdiocese is nonetheless likely to succeed on the merits of its statutory Religious Freedom Restoration Act ("RFRA") claim. 42 U.S.C. §§ 2000bb to 2000bb-4.

RFRA "forbids the government from 'substantially burdening a person's exercise of religion' unless the government can 'demonstrate that application of the burden to the person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," *Jackson v. District of Columbia*, 254 F.3d 262, 265 (D.C. Cir. 2001) (brackets omitted) (quoting 42 U.S.C. § 2000bb-1), "even if the

burden results from a rule of general applicability, 42 U.S.C. § 2000bb-1(a). Religious exercise is defined broadly, and "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7), *incorporated by* 42 U.S.C. § 2000bb-2(4). RFRA is applicable to the District of Columbia. *E.g., Potter v. District of Columbia*, 558 F.3d 542, 544 (D.C. Cir. 2009) (affirming grant of summary judgment to RFRA plaintiffs). As an entity exercising the powers of the District of Columbia, WMATA is subject to RFRA. D.C. Code § 9-1107.01 (enacting compact establishing WMATA as "a common agency of each signatory party," including the Commissioners of the District of Columbia).

WMATA's Guidelines substantially burden the Archdiocese's religious practice, and WMATA cannot demonstrate that this is necessary to furthering a compelling government interest. The Archdiocese's "Find the Perfect Gift" campaign is motivated by sincere religious belief: the desire to bring the Catholic faith to more believers during the Advent season. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (sincere religious belief is the basis for a RLUIPA claim); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. __, 134 S. Ct. 2751, 2774 & n.28 (2014) (same). As part of the exercise of that sincere religious belief, the Archdiocese determined that advertising the campaign on the exterior of public buses was a uniquely effective means of transmitting its message. Bus exteriors are ubiquitous yet unobtrusive; they provide repeated and prolonged exposure of content to pedestrians and motorists on sidewalks and streets; and they allow the Archdiocese's message to penetrate critical neighborhoods and reach important populations that are unreachable by other forms of media. WMATA's no-religious-speech policy substantially burdens this exercise of the Archdiocese's religious beliefs by prohibiting the Archdiocese from reaching viewers that it cannot effectively reach by any other means. *See Holt*, 135 S. Ct. at 862 (being required to shave a religiously-motivated beard is a substantial

23

burden on a religious belief). This is true regardless of the fact that other avenues of religious expression remain open to the Archdiocese. *Id.* By obstructing the Archdiocese's sincere religious belief expressed in its "Find the Perfect Gift" campaign, WMATA has imposed a substantial burden on the Archdiocese's religious belief in violation of RFRA.

No compelling government interest justifies WMATA's decision to impose a substantial burden on the Archdiocese's religious beliefs. WMATA's letter denying the Archdiocese's advertising campaign offered no government interest justifying the denial at all, let alone a compelling one. WMATA's justifications for enacting its no-religious-speech policy in 2015 included avoiding community discord, concern about discriminatory statements, and potential threats to safety on public transit. None of these rationales rises to the level of a compelling government interest. A compelling interest is an interest "of the highest order." *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 546-47 (citation omitted). But "a law cannot be regarded as protecting an interest 'of the highest order' ... when it leaves appreciable damage to that supposedly vital interest unprohibited." *Id.* at 547 (ellipsis in original) (citation omitted). WMATA's no-religious-speech policy, even when taken alongside WMATA's entire list of advertising guidelines, "leaves appreciable damage to th[ose] supposedly vital interest[s] unprohibited." *Id.* Commercial advertisements can certainly create discord in the community or promote discrimination, and they can even create safety risks on public transit, but WMATA's guidelines do not restrict such advertisements. No compelling government interest justifies WMATA's no-religious-speech policy.

WMATA's no-religious-speech policy violates RFRA and should be enjoined.

24

**II.     The Archdiocese's Harms Are Irreparable And Imminent, Requiring Temporary Relief.**

The Archdiocese faces imminent, irreparable harm due to WMATA's decision to prohibit it from advertising its "Find the Perfect Gift" campaign on the exterior displays of WMATA buses. "It is well settled" that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106, 129 (D.D.C. 2012) (brackets in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 823 F. Supp. 2d 36, 50 (D.D.C. 2011) ("[T]he harm flowing from a First Amendment violation is *per se* irreparable."). RFRA protects the same types of rights that the Free Exercise Clause protects, and for the same reasons, an infringement of those rights also constitutes irreparable harm. *Tyndale House Publishers, Inc.*, 904 F. Supp. 2d at 129 ("By extension, the same [irreparable injury] is true of rights afforded under the RFRA, which covers the same types of rights as those protected under the Free Exercise Clause of the First Amendment"); *see also O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 995 (10th Cir. 2004) (en banc) (per curiam) ("[The plaintiff] would certainly suffer an irreparable harm, assuming of course that it is likely to succeed on the merits of its RFRA claim."), *sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). WMATA has discriminated against the Archdiocese's viewpoint and religious affiliation by denying the Archdiocese access to its forum, and the Archdiocese's First Amendment interests are thus being impaired. This discrimination is "more than a sufficient showing of irreparable harm." *R.J. Reynolds*, 823 F. Supp. 2d at 50-51.

Moreover, WMATA has denied the Archdiocese the opportunity to communicate its message to critical parts of the Washington community. Because of the ubiquity of WMATA

bus service, messages on bus exteriors reach parts of the community that are underserved by other media. Compl. ¶15; *see also* Outfront Media, http://bit.ly/2BhRumX (last viewed Nov. 27, 2017) (describing how exterior bus advertisements offer "[c]omplete neighborhood-level coverage"). The denial to the Archdiocese of the ability to reach individuals on public sidewalks and thoroughfares in these underserved communities is plainly an irreparable injury.

Finally, the irreparable nature of the injury is underscored by the seasonal timing of the Campaign. "[A] delay of even a day or two may be intolerable" in the context of time-sensitive speech like the Archdiocese's. *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012) (citation omitted). The "Find the Perfect Gift" campaign—like the Salvation Army's Red Kettle Campaign—corresponds to Advent and the Christmas season. "[I]t follows necessarily" that, if the advertisement "is to be effective at all," it must run during those times. *Dimondstein v. Am. Postal Workers Union*, 964 F. Supp. 2d 37, 50 (D.D.C. 2013) (quoting *Johnson v. Local 1199, Hosp. & Health Care Employees Union,* 1986 WL 166 at *4 (S.D.N.Y. Jan. 31, 1986)). In the absence of emergency relief by this Court, the Archdiocese will not be able to promote its campaign in the most effective way during the relevant season, forever losing the opportunity to reach individuals with its timely message of hope and charity during Christmas. *See Carey v. Fed. Election Comm'n*, 791 F. Supp. 2d 121, 134 (D.D.C. 2011) (speaker suffered irreparable injury from a speech restriction because "the political season for the presidential election is already underway and the time to participate is *now*"); *see also Let's Help Florida v. McCrary*, 621 F.2d 195, 199 (5th Cir. 1980), *aff'd sub nom. Firestone v. Let's Help Florida*, 454 U.S. 1130 (1982) ("An injunction is proper in this case because no legal remedy could correct the irreparable injury to plaintiffs' first amendment rights, important *for an election*

26

*only weeks away.*" (emphasis added)).  That lost opportunity and the constitutional injury that accompanies it is a clear and immediate harm that cannot be remedied at a later date.

**III.    Permitting The Archdiocese's Advertisements Will Not Harm WMATA.**

Running the Archdiocese's "Find the Perfect Gift" advertisements on public buses will not harm WMATA—to the contrary, it would actually *benefit* WMATA.  The Archdiocese would pay for its exterior bus advertisements just as any other WMATA customer would do, so WMATA actually stands to profit from the speech it has refused.  Nor can WMATA show that this benefit is countered by any harm connected to running the Archdiocese's advertisements. The Archdiocese's simple depiction of a few shepherds carries no risk of inciting violence, nor is it likely to garner the type of negative attention from the public that could actually diminish WMATA's ridership or revenue.  In short, WMATA stands to lose nothing by permitting the Archdiocese's advertisements, and in fact stands to gain from the inclusion of the advertisements in its bus-exterior forum.  This factor therefore weighs in the Archdiocese's favor.

**IV.    The Public Interest Favors Protection Of Constitutional Rights.**

The public interest is served by providing immediate temporary relief to protect the Archdiocese's constitutional rights. As this Court has repeatedly recognized, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (citations omitted); *Abdah v. Bush*, No. Civ. A. 04–1254(HHK), 2005 WL 711814, at *6 (D.D.C. Mar. 29, 2005) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citation omitted); *Freedberg v. U.S. Dep't of Justice*, 703 F. Supp. 107, 111 (D.D.C. 1988) (citation omitted). Moreover, as a governmental entity, WMATA's compliance with the Constitution "is not a harm, but rather is in its best interest." *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 124-25 (D.D.C. 2013). Because the

Archdiocese's, the public's, and WMATA's interests all point in the same direction, the Court should grant temporary relief.

## CONCLUSION

For the foregoing reasons, the Court should enter a temporary restraining order and preliminary injunction to prevent WMATA from denying the Archdiocese's "Find the Perfect Gift" campaign.

Dated: November 28, 2017

Respectfully submitted,

By: _____

Paul D. Clement, P.C.
paul.clement@kirkland.com
Michael F. Williams, P.C.
Megan M. Wold*
Kasdin M. Mitchell**
Joseph C. Schroeder***
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
(202) 879-5000
*Admitted only in Ohio and supervised
by principals of the Firm.
**Admitted only in Alabama and
supervised by principals of the Firm.
***Admitted only in Illinois and
supervised by principals of the Firm.

ATTORNEYS FOR PLAINTIFF
ARCHDIOCESE OF WASHINGTON,
DONALD CARDINAL WUERL,
ARCHBISHOP OF WASHINGTON

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 28th day of November 2017, he caused a true and

correct copies of the MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

to be served via Federal Express Overnight and electronic mail delivery upon the following:

Patricia Y. Lee
General Counsel
Washington Metropolitan Area Transit Authority
600 5th Street, NW
Washington, DC 20001

Rex S. Heinke
Akin Gump
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067-6022

_____
Paul D. Clement