## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARCHDIOCESE OF WASHINGTON,
Donald Cardinal Wuerl, Roman Catholic
Archbishop Of Washington, a corporation sole,

      Plaintiff,

   -v.-

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, et al.,

      Defendants.

CIV. ACTION NO. 1:17-cv-02554-ABJ

## DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................5

A.  WMATA's Decision To Close Its Advertising Space. ................................5

B.  Since Amending Its Advertising Guidelines In 2015, WMATA Has
Regularly Rejected Issue-Oriented Ads....................................................7

C.  Plaintiff Submits Its Ad Promoting Religion, Which Is Rejected
Under Guideline 12. ..............................................................................8

ARGUMENT...................................................................................................................9

I.  THE HIGH STANDARDS FOR A MANDATORY PRELIMINARY
INJUNCTION...............................................................................................9

II.  PLAINTIFF CANNOT ESTABLISH A CLEAR LIKELIHOOD OF
SUCCESS ON THE MERITS NECESSARY FOR A MANDATORY
PRELIMINARY INJUNCTION...........................................................................10

A.  WMATA's Guidelines Do Not Discriminate Based On Viewpoint...........10

1.  WMATA's advertising space is a nonpublic forum......................10

2.  Prohibiting ads that promote or oppose a religion, religious
practice, or belief is a permissible content-based restriction,
not viewpoint discrimination....................................................12

3.  WMATA's Guidelines are reasonable. ........................................16

B.  WMATA Applies Guideline 12 Consistently And Did Not Violate
Plaintiff's Free Speech Clause, Establishment Clause, Or Equal
Protection Rights By Rejecting Its Advertisement...................................18

C.  WMATA Did Not Violate Plaintiff's Free Exercise Rights, Because
Guideline 12 Does Not Unconstitutionally Restrict Plaintiff's Free
Exercise Of Religion. ...........................................................................23

D.  WMATA Did Not Violate the Religious Freedom Restoration Act
("RFRA"), Which Does Not Apply To It.................................................26

1.  RFRA does not apply to WMATA. ..............................................26

2.      Even if RFRA applies to WMATA, Plaintiff cannot show
that Guideline 12 substantially burdens Plaintiff's exercise
of religion. ...................................................................................28

III.    PLAINTIFF HAS NOT SHOWN IT WILL SUFFER ANY
IRREPARABLE HARM IF A MANDATORY INJUNCTION DOES NOT
ISSUE............................................................................................................31

IV.     THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST
WEIGH AGAINST INJUNCTIVE RELIEF. .....................................................33

CONCLUSION........................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allen v. Hickel,*
424 F.2d 944 (D.C. Cir. 1970) ................................................................. 14, 19, 23

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*
(*"SMART"*), 698 F.3d 885 (6th Cir. 2012) ............................................... 11, 15, 21

*Am. Freedom Def. Initiative v. WMATA*
No. 1:15-cv-01038-GK, 2017 WL 1167197 (D.D.C. Mar. 28, 2017 ........ 11, 15, 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................. 22

*Barker v. Conroy,*
No. 16-850, 2017 WL 4563165 (D.D.C. Oct. 11, 2017) .......................... 30

*Berry v. Dep't of Soc. Servs.,*
447 F.3d 642 (9th Cir. 2006) .................................................................... 24

*Bonham v. District of Columbia Library Admin.,*
989 F.2d 1242 (D.C. Cir. 1993) ............................................................... 14

*Brandon v. Board of Ed. Of Guilderland Central School Dist.,*
635 F.2d 971 (2d Cir. 1980) ..................................................................... 18

*Cate v. Oldham,*
707 F.2d 1176 (11th Cir. 1983) ................................................................ 32

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ................................................................. 32

*Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v.*
*Martinez,*
561 U.S. 661 (2010) ................................................................................. 12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................................. 24

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010) ................................................................................. 20

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ........................................................................ 3, 26, 27, 28

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,*
  15 F. Supp. 2d 1 (D.D.C. 1997) ........................................................................................ 10

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
  473 U.S. 788 (1985) ...................................................................................... 10, 12, 16

*DiLoreto v. Downey Unified School Dist. Bd. of Educ.,*
  196 F.3d 958 (9th Cir. 1999) ........................................................................... 13, 14

*Dorfmann v. Boozer,*
  414 F.2d 1168 (D.C. Cir. 1969) ..................................................................................... 10

*Employment Div., Dep't of Human Res. of Or. v. Smith,*
  494 U.S. 872 (1990) ............................................................................ 24, 25, 26

*Freedom from Religion Found., Inc. v. City of Warren, Mich.,*
  873 F. Supp. 2d 850 (E.D. Mich. 2012) .......................................................................... 14

*Goldie's Bookstore v. Superior Ct.,*
  739 F.2d 466 (9th Cir. 1984) ......................................................................................... 32

*Good News Club v. Milford Central School,*
  533 U.S. 98 (2001) ....................................................................................... 11, 12, 13

*Henderson v. Kennedy,*
  253 F.3d 12 (D.C. Cir. 2001) ........................................................................................ 25

*Hohe v. Casey,*
  868 F.2d 69 (3d Cir 1989) ............................................................................................. 32

*Holt v. Hobbs,*
  135 S. Ct. 853 (2015) .................................................................................................... 28

*Initiative & Referendum Inst. v. U.S. Postal Serv.,*
  685 F.3d 1066 (D.C. Cir. 2012) .................................................................................... 16

*Jimmy Swaggart Ministries v. Bd. of Equalization,*
  493 U.S. 378 (1990) ...................................................................................................... 25

*Johnson v. Robison,*
  415 U.S. 361 (1974) ...................................................................................................... 30

*Kaemmerling v. Lappin,*
  553 F.3d 669 (D.C. Cir. 2008) .......................................................................... 28, 29, 30

*Lamb's Chapel v. Center Moriches Union Free School Dist.,*
  508 U. S. 384 (1993) ...................................................................................... 12, 13, 15

*Lehman v. City of Shaker Heights,*
    418 U.S. 298 (1974) .................................................................................11, 15, 18, 21, 22

*Levitan v. Ashcroft,*
    281 F.3d 1313 (D.C. Cir. 2002) ............................................................................25

*Little Pencil, LLC v. Lubbock Independent School District,*
    Civil Action No. 5:14-CV-014-C, 2014 WL 11531267 (N.D. Tex. 2014) ...................... 24, 25

*Lynch v. Donnelly,*
    465 U.S. 668 (1984) ...........................................................................................14

*Mahoney v. D.C.,*
    662 F. Supp. 2d 74 (D.D.C. 2009) ........................................................................25

*Mahoney v. Doe,*
    642 F.3d 1112 (D.C. Cir. 2011) .................................................................... 25, 29, 31

*McGuire v. Reilly,*
    260 F.3d 36 (1st Cir. 2001) ..................................................................................18

*Metzl v. Leninger,*
    57 F.3d 618 (7th Cir. 1995) .................................................................................14

*Morris v. Wash. Metro. Area Transit Auth.,*
    781 F.2d 218 (D.C. Cir. 1986) ........................................................................ 27, 28

*Navistar, Inc. v. EPA,*
    No. 11cv449, 2011 WL 3743732 (D.D.C. Aug. 25, 2011) ................................ 9, 31

*New Orleans v. Dukes,*
    427 U.S. 297 (1976) ...........................................................................................22

*Payden-Travers v. Talkin,*
    No. 13-1735 (CKK), 2017 WL 2371116 (D.D.C. May 31, 2017)................................. 29, 31

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
    460 U.S. 37 (1983) ........................................................................................ 10, 11

*Police Dept. of City of Chicago v. Mosley,*
    408 U.S. 92 (1972) ........................................................................................ 18, 21

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ...................................................................................... 12, 15

*Ridley v. Mass. Bay Transp. Auth.,*
    390 F.3d 65 (1st Cir. 2004)............................................................................. 11, 21

*Rigdon v. Perry*,
    962 F. Supp. 150 (D.D.C. 1997) ......................................................................25

*Rosenberger v. Rector & Visitors of University of Va.*,
    515 U.S. 819 (1995) ................................................................. 11, 12, 13, 15

*Rushia v. Town of Ashburnham*,
    701 F.2d 7 (1st Cir. 1983)...........................................................................32

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ...................................................................................30

*Singh v. McHugh*,
    No. 14-1906, 2016 WL 2770874 (D.D.C. May 13, 2016) ..................................30

*Tarrant Reg'l Water Dist. v. Hermann*,
    569 U.S. 614 (2013) ...................................................................................27

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
    450 U.S. 707 (1981) ...................................................................................30

*Tracy Rifle & Pistol LLC v. Harris*,
    118 F. Supp. 3d 1182 (E.D. Cal. 2015) .....................................................32, 33

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) ...............................................................................24

*United States Railroad Retirement Board v. Fritz*,
    449 U.S. 166 (1980) ...................................................................................22

*Vance v. Bradley*,
    440 U.S. 93 (1979).....................................................................................22

*Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ...................................................................................13

*Wilson v. James*,
    139 F. Supp. 3d 410 ...................................................................................28

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................9, 10

**STATUTES & RULES**

42 U.S.C. § 2000bb................................................................... 4, 26, 27, 28

Fed. R. Civ. Proc. 8........................................................................................22

D.C. Code § 9-1107.01(4) ...........................................................................26, 27

Md. Transp. Code § 10-204....................................................................................................27

Va. Code Ann. § 33.2-3100.................................................................................................27

## PRELIMINARY STATEMENT

Plaintiff Archdiocese of Washington ("Plaintiff") asks this Court to force Defendants Washington Metropolitan Area Transit Authority and Paul J. Wiedefeld (collectively "WMATA") to accept for display on WMATA's buses an advertisement that Plaintiff admits has a "religious nature" and is "part of a larger campaign to encourage individuals to return to church during Advent ['the liturgical season . . . in which Christians prepare to celebrate the birth of Christ.']." Because Plaintiff's "find your perfect gift" ad promotes a religion, religious practice, and religious belief, it is prohibited by Guideline 12 of WMATA's Guidelines Governing Commercial Advertising ("Guidelines"), which is a lawful restriction on advertising in a nonpublic forum. Therefore, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion" or "Mot.") should be denied.

Plaintiff cannot show a clear likelihood of success on the merits needed for a mandatory injunction. First, Plaintiff wrongly asserts that WMATA's advertising space is a public forum, but it has been a nonpublic forum since 2015, when Guideline 12 was adopted. As such, WMATA can enact content-based restrictions that prohibit specific categories of speech, including speech that "promote[s] or oppose[s] any religion, religious practice, or [religious] belief." As long as that restriction does not discriminate based on viewpoint and is reasonable, the restriction is constitutional.

Guideline 12 satisfies those requirements. Contrary to Plaintiff's claims, Guideline 12 does not discriminate based on viewpoint. Plaintiff mistakenly contends that any restriction limiting religious speech automatically is viewpoint discrimination, but that argument is unsupported by any precedent. And, if adopted, it would effectively nullify the nonpublic forum doctrine by making religious content-based restrictions, which are constitutional in a nonpublic forum, unconstitutional viewpoint discrimination.

1

Plaintiff seems to contend that its ad is just giving a religious viewpoint on Christmas. However, its ad does nothing of the kind.  Its ad promotes Plaintiff's religious beliefs; it does not comment on Christmas.  If Plaintiff's characterization of its ad as just a religious viewpoint on Christmas was accepted, then no speech promoting religion could ever be excluded from a nonpublic forum, because it could always be characterized as just "speech from a religious viewpoint."  Viewpoint discrimination is opening a topic, e.g., pregnancy, for discussion and then forbidding religious views on that topic.  WMATA has done no such thing.

Plaintiff's argument that Guideline 12 discriminates based on viewpoint because of ads that WMATA permits fares no better.  Plaintiff maintains that, by accepting commercial advertising that mentions Christmas or seasonal fundraising ads, WMATA accepts advertising on the same subject as Plaintiff's ad.  But as the advertised FindThePerfectGift.org website says immediately upon opening, the "perfect gift" Plaintiff is promoting is "JESUS" and visitors are urged to attend mass and learn about Catholic tradition.  Declaration of Jessica M. Weisel ("Weisel Decl."), ¶ 2, Exh.I.  Thus, the subject of Plaintiff's ad promoting religion is fundamentally different from ads selling commercial products – one is religious and one is not. WMATA may exclude content on specific topics – here religion – from its nonpublic forum. That is all it has done in an even-handed manner prohibiting all religious ads.

Guideline 12 is also a reasonable restriction that serves the goals of decreasing community outrage over ads critical of or promoting religion, avoiding security concerns generated by such ads, reducing vandalism, and reducing the administrative burden on WMATA in reviewing ads on an ad hoc basis.  Declaration of Lynn M. Bowersox ("Bowersox Decl."), ¶¶ 9-12.  The reasonableness of these clear, categorical guidelines is not undermined by the purportedly "innocuous" nature of Plaintiff's ad.  If WMATA permits Plaintiff's ad, it would

have to permit all ads promoting or opposing religion, religious practices, or religious beliefs – including ads that are far more likely to trigger complaints, security concerns, and vandalism. Even assuming there is some clear definition of an "innocuous" ad (and there is not), WMATA cannot permit "innocuous" ads promoting religion but ban "non-innocuous ads" promoting religion.  That would be viewpoint discrimination.

Second, Plaintiff argues that its rights under the Free Speech, Establishment, and Equal Protection Clauses of the Constitution are violated by the purportedly inconsistent application of the Guidelines.  To support this argument, Plaintiff points to ads for the Salvation Army's charitable campaign and for CorePower Yoga.  Not surprisingly, Plaintiff does not even submit copies of those ads with its Motion, because it is plain from the face of the ads that they do not promote religion, religious practices, or religious beliefs.  Even the websites for those entities contain no language that suggests they promote religion.  That the Salvation Army is a religious organization is irrelevant.  WMATA does not reject ads from religious organizations; it rejects ads that promote religion.  WMATA's application of Guideline 12 has therefore been consistent.

Third, Plaintiff contends that Guideline 12 infringes on its free exercise of religion. Plaintiff's argument is unavailing.  None of the cases on which Plaintiff relies involve a nonpublic forum, such as the one here.  In addition, the refusal to display an advertisement does not substantially burden the free exercise of religion, which Plaintiff must prove to succeed on its free exercise claim.  And here no heightened scrutiny is applicable, because neither Plaintiff's free speech nor free exercise claim is viable.  Therefore, Plaintiff's free exercise claim lacks merit.

Fourth, Plaintiff contends that Guideline 12 violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb.  In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the

Supreme Court held that RFRA could not apply to states and their political subdivisions, because Congress had no power to control state actions. Although WMATA is an instrumentality of the District of Columbia, which is a "covered entity" under RFRA, WMATA also is an instrumentality of Maryland and Virginia. Applying RFRA to WMATA would unconstitutionally intrude on Maryland's and Virginia's state sovereignty, including their traditional state prerogatives over transportation.

Even if RFRA did apply to WMATA, Guideline 12 does not substantially burden Plaintiff's free exercise of religion. Plaintiff's inability to advertise in WMATA's nonpublic forum does not prevent Plaintiff from performing any conduct required by its religion and leaves Plaintiff with ample alternative means for promoting its "find the perfect gift" campaign and website.

In addition to no showing of a clear likelihood of success on the merits, Plaintiff fails to establish that it will be irreparably harmed if a mandatory injunction does not issue. Any impact on Plaintiff's ability to promote its religion is minimal at best, because it admittedly can and is promoting its religion through means other than bus advertising. Plaintiff acknowledges that its advertising campaign uses social media and the internet, and is using outdoor advertising, including on bus shelters not owned by WMATA. Consequently, there is no likelihood of irreparable harm to support a TRO or injunction.

Finally, the balance of the equities does not weigh in favor of a TRO or preliminary injunction. If WMATA is forced to run the ads, it will have to run all ads promoting or opposing religion, religious practices, or religious beliefs, including ads likely to generate complaints, vandalism, and possibly violence. The public interest in preventing these harms weighs against a TRO or injunction.

Accordingly, the TRO and preliminary injunction should be denied.

## FACTUAL BACKGROUND

### A.      WMATA's Decision To Close Its Advertising Space.

WMATA operates one of the nation's largest heavy rail and bus transit systems, serving customers in Maryland, Virginia, and the District of Columbia.  Complaint ¶ 7.  To help fund its operations, WMATA sells advertising space.  Bowersox Decl., ¶ 3.  Advertisers can purchase advertising space in WMATA's transit system.  *Id.*

In the 1970s, WMATA's Board of Directors established a policy governing ads in WMATA's advertising space.  *Id.*, ¶ 4.  As part of that policy, WMATA's advertising space was considered a designated public forum.  *Id.*

In 2010, WMATA began to reconsider its policy.  *Id.*, ¶ 5.  Almost every month, WMATA was faced with complaints from employees, riders, elected officials, and community and business leaders about ads in WMATA's advertising space.  *Id.*  Ads engendering complaints covered a wide variety of public policy subjects and reflected different viewpoints, including ads critical of the Catholic Church's stance on condom usage; ads from PETA showing animal cruelty; ads related to marijuana legalization; ads regarding sexual orientation; an ad by the Airline Association related to rules and regulations governing international aviation; and ads expressing opinions on government health care policies.  *Id.*, ¶ 6.

WMATA ultimately concluded that the economic benefits of such issue-oriented ads were outweighed by four considerations: community and employee opposition, security risks, vandalism, and administrative burdens.  *Id.*, ¶ 9.  First, issue-oriented ads, including ads promoting religion, led to community opposition and complaints, adverse publicity for WMATA, and claims from some community leaders that WMATA was perpetuating

discrimination by carrying certain messages from certain advertisers.  *Id.*, ¶ 10.  WMATA also received complaints from its employees, who were exposed to issue-oriented ads over extended periods.  *Id.*

Second, issue-oriented ads, including ads promoting religion, sparked concerns about security.  Both the Metro Transit Police Department and the U.S. Department of Homeland Security feared that certain ads, due to external world events, would incite individuals to perpetrate violence on the system and to harm WMATA employees and customers.  *Id.*, ¶ 11.  For example, a proposed ad featuring a cartoon depiction of the Prophet Mohammad raised concerns because of violent reactions to such depictions in the past.  *Id.*

Third, such ads were vandalized.  Bowersox Decl., ¶ 12.  Sometimes, the vandals also wrote messages on the ads contrary to the messages being advocated in the ads.  *Id.*

Fourth, issue-oriented ads, including ads promoting religion, created an administrative burden.  *Id.*, ¶ 13.  WMATA was spending substantial time reviewing proposed ads and responding to the problems noted above.  *Id.*

As a result, on May 28, 2015, the Board unanimously adopted a motion ("Motion") that changed WMATA's advertising space to a nonpublic forum.  *Id.*, ¶ 7, Exh. A.  The Motion closed "WMATA's advertising space to any and all issue-oriented advertising, included but not limited to, political, religious, and advocacy advertising until the end of the calendar year."  *Id.*  Also, the Motion stated that the Board would "review what role such issue-oriented advertising has in WMATA's mission to deliver, safe, equitable and reliable transportation services to the Nation's Capital, and will seek public comment and participation for its consideration before making a final policy determination."  *Id.*

Before making a final determination, WMATA staff conducted a survey of the public's views on issue-oriented ads.  *Id.*, ¶ 14.  The results included findings that: (1) 98% of the public was familiar with the types of ads found on buses, in trains, and in stations; (2) 58% opposed issue-oriented ads while 41% supported such ads; and (3) 46% were extremely opposed to issue-oriented ads while 20% were extremely supportive of such ads.  *Id.*

In November 2015, WMATA's Board made a final decision to close the advertising space to ads that "are issue-oriented, including political, religious, and/or advocacy in nature. . . ."  *Id.*, ¶ 15, Exh. B.  Among the Guidelines that the WMATA Board adopted was Guideline 12, which stated that "[a]dvertisements that promote or oppose any religion, religious practice or belief are prohibited."  *Id.*, ¶ 16, Exh. B.   The Board's decision applied equally to all parties seeking to run issue-oriented advertising, *i.e.*, it was viewpoint neutral.  *Id.*, ¶¶ 17-18, Exhs. C-D.

### B.   Since Amending Its Advertising Guidelines In 2015, WMATA Has Regularly Rejected Issue-Oriented Ads.

Under its new policy, WMATA has regularly rejected ads that contain issue-related advocacy – religious, political, or otherwise.  Bowersox Decl., ¶¶ 17-18.  Among ads that have been rejected for violating Guideline 12 are: (1) an ad for a local church God's Remnant Assembly; (2) an ad urging viewers to "Walk with Francis" during a Papal visit; (3) several ads for the Washington National Cathedral encouraging viewers to "find inspiration[,] a home[,] the unexpected[, and] what you're looking for"; and (4) an ad depicting a cartoon version of the Prophet Mohammed saying "You can't draw me."  Bowersox Decl., ¶ 17, Exh. C.

WMATA also has rejected advocacy ads covering public policy subjects that include: (1) anti-poaching and wildlife trafficking (from WildAid and the U.S. Fish and Wildlife Service); (2) pro-Israel and pro-Egypt (from Birthright Israel and the Egyptian Embassy, respectively); (3) pro-science (from the American Association for the Advancement of Science); (4) refugee

support (from Doctors Without Borders); (5) celebrating the failure of the June 2015 Turkish

coup attempt (from Musiad USA, a Turkish American association); and (6) anti-prostitution

(from End Demand Illinois).  Bowersox Decl., ¶ 18, Exh. D.

> **C.      Plaintiff Submits Its Ad Promoting Religion, Which Is Rejected Under Guideline 12.**

On October 23, 2017, Plaintiff contacted WMATA's outside media contractor,

OUTFRONT Media, seeking to place an ad on WMATA buses.  McFadden Decl., Exh. G.

Plaintiff's ad consists of a scene of shepherds with their sheep viewing the night sky from

the left of the ad, with a bright star representing the Star of Bethlehem on the right.[1]  McFadden

Decl., Exh. D.  Across the ad is the text "FIND THE perfect gift" above the website address

"FindThePerfectGift.org."  *Id.*  The ad does not comment on Christmas.  *Id.*

When WMATA received Plaintiff's proposed ad, it was submitted to the review panel for

evaluation.  Bowersox Decl., ¶ 19.  In addition to reviewing the proposed ad, two members of the

panel also reviewed the preliminary http://findtheperfectgift.org website that existed at the time.

*Id.*  The panel concluded that the ad violated Guideline 12.  *Id.*, ¶ 20.

Although the website that existed at the time of the decision contained content promoting

religion, the current website contains even more.  Opening the website, a viewer is met with the

text: "Jesus is the perfect gift." and "find the perfect gift of God's love this Christmas."  Weisel

Decl., Exh. I, https://www.findtheperfectgift.org/.  Below that are some links, such as one with

the word "FIND" that leads to a page with the text:

---

[1] Plaintiff attaches several versions of its "find the perfect gift" ads, but only the ad attached to the McFadden Declaration as Exhibit D was submitted to WMATA for review. Bowersox Decl., ¶ 19.

> God has prepared an amazing gift for you.  A place of peace, joy, and community
> with God and others.  In the frenzy of buying gifts for others, take time to receive
> God's love for you at Christmas Mass.
>
> Find Christmas Mass times throughout the Archdiocese of Washington using the
> map below!

*Id.*, Exh. J, https://www.findtheperfectgift.org/masstimes/.  Similar language appears on the main

website below the links.  *Id.*, Exh.I, https://www.findtheperfectgift.org/.  Other links offer to

teach viewers about Christmas traditions and promote a Filipino 9-day mass at several parishes.

*Id.*, Exh. K, https://www.findtheperfectgift.org/discover-advent-and-christmas-traditions/.

 After the ad was rejected, Plaintiff's counsel wrote WMATA regarding the decision.

McFadden Decl., Exh. H.  In response, WMATA's counsel explained that it had closed its forum

to issue-oriented ads in November 2015 and explained that the "find the perfect gift" ad is

prohibited by Guideline 12.  *Id.*, Exh. I.

## ARGUMENT

## I. THE HIGH STANDARDS FOR A MANDATORY PRELIMINARY INJUNCTION.

 The standards for a preliminary injunction are well-settled.  The moving party "must

establish [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable

harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and

[4] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc*., 555

U.S. 7, 20 (2008).  "It is particularly important for the movant to demonstrate a substantial

likelihood of success on the merits" because, "absent a substantial indication of likely success on

the merits, there would be no justification for the court's intrusion into the ordinary processes of

administration and judicial review."  *Navistar, Inc. v. EPA*, No. 11cv449, 2011 WL 3743732, at

*3 (D.D.C. Aug. 25, 2011) (citation omitted).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and "[t]he power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised," *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (internal quotation marks omitted). "[W]here an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (internal quotation marks and citations omitted), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).

## II.   PLAINTIFF CANNOT ESTABLISH A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS NECESSARY FOR A MANDATORY PRELIMINARY INJUNCTION.

### A.   WMATA's Guidelines Do Not Discriminate Based On Viewpoint.

#### 1.   WMATA's advertising space is a nonpublic forum.

Plaintiff devotes almost none of its argument to the applicable standard governing restrictions on speech in nonpublic forums. It begins its argument with the puzzling assertion that WMATA's property is a public forum (Mot. at 12-13), but as WMATA has previously informed Plaintiff (McFadden Decl., Exh. I), WMATA's Board of Directors voted to change its advertising space to a nonpublic forum in 2015 (Bowersox Dec., Exhs. A, B). As the Supreme Court has repeatedly noted, a government "is not required to indefinitely retain the open character of" its forum. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 802 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

A designated public forum is established only when a governmental entity "intentionally designate[s] a place or means of communication as a public forum." *Cornelius*, 473 U.S. at 800.

WMATA's practice of excluding political, religious, and advocacy ads since 2015 demonstrates just the opposite intent: to maintain its advertising space as a nonpublic forum. *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974) (advertising space sold on city buses was not a public forum because the city had rejected all political advertisements) (plurality); *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 78 (1st Cir. 2004) (transit authority's exclusion of seventeen advertisements, including those depicting violence, indecency, profanity, denigration of women, and tobacco products, proved it was a nonpublic forum); *see also Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.* ("*SMART*"), 698 F.3d 885, 892 (6th Cir. 2012) (holding transit authority's advertising space was nonpublic forum because its "tight control over the advertising space and the multiple rules governing advertising content make the space incompatible with the public discourse, assembly, and debate that characterize a designated public forum"). Indeed, a Court in this District recently confirmed that WMATA's advertising space has been converted to a nonpublic forum. *Am. Freedom Def. Initiative v. WMATA* ("*AFDI v. WMATA*"), No. 1:15-cv-01038-GK, 2017 WL 1167197, at *3 (D.D.C. Mar. 28, 2017), *appeal pending*, No. 17-7059 (D.C. Cir. filed April 7, 2017).

Thus, Plaintiff's analysis of WMATA's advertising policy under the law applicable to public forums is misguided. Instead, in a nonpublic forum, "[t]he State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics[,]'" *i.e.*, it can have content-based restrictions. *Good News Club v. Milford Central School*, 533 U.S. 98, 106 (2001) (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U. S. 819, 829 (1995)). The government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46. In other words,

access to a nonpublic forum can be restricted as long as the restrictions are viewpoint neutral and reasonable. *Cornelius*, 473 U.S. at 800.[2]

> ### 2. Prohibiting ads that promote or oppose a religion, religious practice, or belief is a permissible content-based restriction, not viewpoint discrimination.

Plaintiff contends that a restriction on advertising that promotes or opposes religion is viewpoint based. Plaintiff is wrong.

None of the cases Plaintiff cites deal with advertising restrictions. Instead, Plaintiff relies on three cases involving access to school facilities for expressive activities for or funding of a broad category of speech but that excluded speech from a religious perspective. Thus, in *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U. S. 384 (1993), the Supreme Court held that a school district could not prevent the showing of a film series about family issues from a religious perspective when it allowed presentations about family issues from non-religious perspectives. *Id.* at 393-94; *accord Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 108-12 (2001) (school could not deny Christian club the use of school facilities to "teach morals and character from a religious standpoint" when it allowed other organizations to use school facilities to promote moral and character development). Similarly, a university that funded student publications regarding student life and issues could not refuse to fund a publication that discussed those issues from a religious standpoint. *Rosenberger v. Rector & Visitors of University of Va.*, 515 U.S. 819, 829-30 (1995).

---

[2] Plaintiff refers to the advertising space as a "limited public forum" (Mot. at 13), but whether that term or "nonpublic forum" is used, the same First Amendment test applies. *Compare R.A.V. v. City of St. Paul*, 505 U.S. 377, 390 n.6 (1992) (noting that in "nonpublic forums," the government can engage in "reasonable and viewpoint neutral content-based discrimination"), *with Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010) (noting that in "limited public forums," the government "may impose restrictions on speech that are reasonable and viewpoint neutral").

Plaintiff urges this Court to hold that a restriction on religious speech automatically constitutes viewpoint discrimination.  Nothing in the Supreme Court's cases supports that argument; it is a mischaracterization of *Rosenberger* and *Lamb's Chapel*.  Moreover, the Ninth Circuit rejected a nearly identical argument in *DiLoreto*.  *DiLoreto v. Downey Unified School Dist. Bd. of Educ.*, 196 F.3d 958, 696-70 (9th Cir. 1999) (holding that school district could exclude a religious advertisement from the fence of its baseball field, which was a nonpublic forum).  *DiLoreto* distinguished between an exclusion of religion as a subject matter and viewpoint discrimination consisting of the disfavored treatment of otherwise-permissible subject matter because it was presented from a religious perspective.  *Id.*

 Indeed, if excluding religious speech automatically constituted viewpoint discrimination, the Supreme Court would have had no need to analyze how the governments allowed speech on particular topics – family issues in *Lamb's Chapel*, teaching of morals and character in *Good News*, and student life and issues in *Rosenberger* – but not from a religious standpoint.  The Supreme Court could have simply said that the speech promoted religion so the speech was protected.  It did not.  If Plaintiff was correct, the topics permitted in the nonpublic forums would have been irrelevant; all that would have mattered was that religious speech was excluded.

Equally unavailing is Plaintiff's argument that its ad promoting religion must be permitted because WMATA permits non-religious ads about Christmas such as commercial advertisements for Christmas gifts and secular seasonal fund-raising campaigns.  Mot. at 6, 15. This argument ignores the "commonsense differences between speech that does no more than propose a commercial transaction and other varieties."  *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n. 24 (1976).

The mere mention of Christmas or "Seasons Greetings" in an advertisement for commercial goods or a fund-raising campaign does not itself promote or oppose any religion, religious practice, or religious belief.  WMATA does not have to accept Plaintiff's characterization of its ad and website, and turn a blind eye to their subject, which is to proselytize and promote Catholicism.  *Freedom from Religion Found., Inc. v. City of Warren, Mich.*, 873 F. Supp. 2d 850, 865 (E.D. Mich. 2012) (court is not bound by plaintiffs' characterization of speech; government may have different interpretation and plaintiffs may not "simply impute their preferred interpretation"), *aff'd*, 707 F.3d 686 (6th Cir. 2013); *DiLoreto*, 196 F.3d at 969 (plaintiff could not circumvent restriction on religious advertising by claiming his ad reciting the Ten Commandments was a business advertisement; the subject of ad was still religion).  Thus, WMATA properly concluded that Plaintiff's ad promoted a religion, religious practice, or religious belief, and was not merely speech on an otherwise permissible subject.[3]

---

[3] Even if Plaintiff was permitted to define the ad's subject matter as Christmas and not religion, its argument would fail.  The D.C. Circuit has long recognized that Christmas has both a religious and "secular half."  *Allen v. Hickel*, 424 F.2d 944, 948 (D.C. Cir. 1970); *see Bonham v. District of Columbia Library Admin.*, 989 F.2d 1242, 1245 (D.C. Cir. 1993) (noting that the Supreme Court in *Lynch v. Donnelly*, 465 U.S. 668, 684-85 (1984), relied on the fact that Christmas "had acquired significant secular meaning and traditions").  Other courts have recognized the same duality.  *E.g., Metzl v. Leninger*, 57 F.3d 618, 621 (7th Cir. 1995) ("Some holidays that are religious, even sectarian, in origin, such as Christmas and Thanksgiving, have so far lost their religious connotation in the eyes of the general public that government measures to promote them, as by making them holidays or even by having the government itself celebrate them, have only a trivial effect in promoting religion. . . . Christmas and Thanksgiving have accreted secular rituals, such as shopping, and eating turkey with cranberry sauce, that most Americans, regardless of their religious faith or lack thereof, participate in.").

Commercial advertisements, or advertisements involving "secular symbols of the holiday—reindeer, the Yule log, the Christmas trees—[,]" address the *secular* half of Christmas.  *Hickel*, 424 F.2d at 949.  Overtly religious ads, like those featuring religious imagery like a scene of shepherds and the Star of Bethlehem, or those encouraging a "return to church during Advent," (Mot. at 6) address the *religious* half of Christmas.  These advertisements do not reflect different viewpoints about the subject-matter of Christmas, but rather separate subject-matter

Finally, Plaintiff contends that even if WMATA's Guidelines are content-based restrictions, not viewpoint discrimination, they should be struck down as unconstitutional as "contrary to our constitutional tradition. . . ." Mot. at 15-16.  It cites no authority for the proposition that this purported tradition overrides the nonpublic forum analysis.  Nor can it.  Just as Plaintiff contends that support for religion is a constitutional tradition, so could a plaintiff argue that our Constitution has long protected political speech.  *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 422 (1992) (In hierarchy of categories of speech protected by the First Amendment, "[c]ore political speech occupies the highest, most protected position").  Restrictions on political speech in nonpublic forums are constitutional and not viewpoint based.  *See, e.g., Lehman*, 418 U.S. at 303-04; *SMART*, 698 F.3d at 892-96; *AFDI v. WMATA*, 2017 WL 1167197, at *7-13.  The rule for religious speech cannot be different.

Plaintiff also seems to assert that its ad and related website are commenting on Christmas and that it cannot be prevented from commenting on Christmas from a religious standpoint.  However, they are doing nothing of the kind.  They do not comment on Christmas; they promote Plaintiff's religion.  This is nothing like the situation in the Supreme Court cases discussed above where the government opened these topics for discussion and then prohibited discussion of those topics from a religious viewpoint.  Plaintiff is not being prohibited from discussing a topic from a religious viewpoint; it just cannot promote its religion nor can anyone promote their religion.  For all these reasons, this Court should hold that WMATA's Guideline 12 is a content-based restriction that does not discriminate based on viewpoint.

---

components of a holiday that the D.C. Circuit has long recognized to be multi-faceted.  Here, WMATA has simply prohibited advertisements related to the subject of the religious half of Christmas, but not the secular half.  That is not viewpoint discrimination within the meaning of *Rosenberger* or *Lamb's Chapel*.

3.      WMATA's Guidelines are reasonable.

Restrictions on speech in a nonpublic forum must also be reasonable.  *Cornelius*, 473

U.S. at 800.  A regulation of speech in a nonpublic forum is "reasonable if it is consistent with

the government's legitimate interest in maintaining the property for its dedicated use."  *Initiative*

*& Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1073 (D.C. Cir. 2012).  This standard

does not impose a high bar: "[T]he restriction 'need only be *reasonable;* it need not be the most

reasonable or the only reasonable limitation.'"  *Id.* (quoting *Cornelius,* 473 U.S. at 808).

Plaintiff attempts to dispute the reasonableness of Guideline 12 with a bald assertion that

the prohibition on ads promoting or opposing a religion, religious practice, or belief bears no

reasonable relation to the purpose behind the decision to adopt Guideline 12 and the other

prohibitions on issue-oriented ads.  Mot. at 16.  Plaintiff speculates as to that purpose, but

WMATA's actual reasons are: (1) community and employee opposition; (2) security risks; (3)

vandalism, and (4) administrative burdens.  Bowersox Decl., ¶¶ 9-10.

Not only does Plaintiff offer no evidence to support its assertion that religious ads "do not

carry an inherently greater risk of provoking community discord, creating concern about

discriminatory statements, and generating safety threats as compared to commercial

advertisements[,]" but evidence shows that religious ads have raised all of those concerns.  For

instance, pro-Islam advertisements in New York generated controversy when they were run in its

subway stations.   Weisel Decl., Exh. L (article titled "Islam subway ads cause stir in New

York").  In 2001, when its advertising space was still a public forum, WMATA ran an ad

criticizing the Catholic Church's stance on condoms that generated hundreds of written

complaints and phone calls objecting to the ad.  Bowersox Decl., ¶ 25.  Ironically, Plaintiff

complained about this ad.  *Id.*  Prohibiting such ads, therefore, serves the goal of lowering

community and employee opposition and reducing vandalism of such ads.

Prohibiting ads promoting or opposing a religion also can serve the interest of increased security for WMATA customers and employees.  In fact, as a Court in this District acknowledged, the submission of an anti-Islam ad featuring a cartoon depiction of the Prophet Mohammad was a factor in WMATA finally deciding to close its forum after years of considering the issue.  *AFDI v. WMATA*, 2017 WL 1167197, at *11.  The ad raised concerns because some Muslims consider drawing the Prophet Mohammed so offensive that they have reacted violently to such depictions in the past.  Bowersox Decl., ¶ 11.  At the contest where that ad was produced, two gunmen were killed in an attempt to attack the building where the contest was being held.  Weisel Decl., Exh. M.

Thus, Plaintiff's contention that ads with religious content are not controversial and do not sow discord is belied by WMATA's own experience.  This history establishes that WMATA's decision to impose a content-based restriction on ads that promote or oppose religion, a religious practice, or religious belief is reasonable.

That Plaintiff thinks its "find the perfect gift" ad or ads generally promoting Catholic theology are innocuous is irrelevant.  Plaintiff cites no law – nor can it – that requires WMATA to examine each ad to determine if it would cause conflict.  To the contrary, such review would invite prohibited viewpoint discrimination.  WMATA cannot allow religious advertisements that it deems "safe" while prohibiting other religious advertisements that it deems "unsafe."  The entire purpose of excluding categories of speech is to avoid viewpoint discrimination.

Because Plaintiff has failed to show Guideline 12 is viewpoint discrimination and unreasonable, it has failed to establish a clear likelihood of success on its Free Speech claim.

**B.    WMATA Applies Guideline 12 Consistently And Did Not Violate Plaintiff's Free Speech Clause, Establishment Clause, Or Equal Protection Rights By Rejecting Its Advertisement.**

Guideline 12, which prohibits "[a]dvertisements that promote or oppose any religion, religious practice, or belief," must be applied consistently.  *Lehman*, 418 U.S. at 300-01, 304 (finding no First Amendment or Equal Protection violation where city rejected political advertisements on its rapid transit vehicles and applied the policy consistently) (plurality); *Brandon v. Board of Ed. Of Guilderland Central School Dist.*, 635 F.2d 971 (2d Cir. 1980) (finding that school board's refusal to allow communal prayer meetings in school facility was constitutional, because "all religious groups [were] equally denied access to [the] school['s] facilities").  Plaintiff alleges that WMATA violated the Establishment Clause and Plaintiff's Free Speech and Equal Protection rights because WMATA allegedly applied Guideline 12 inconsistently by rejecting Plaintiff's advertisement but accepting advertisements from the Salvation Army and CorePower Yoga.[4]  That argument fails because the other advertisements did not promote religion.  Thus, WMATA has applied Guideline 12 consistently, so Plaintiff's "arbitrary enforcement" arguments have no merit.

Plaintiff's advertisement indisputably promotes religion.  Plaintiff admits that its ad has a "religious nature," promotes "the Archdiocese's effort to emphasize the religious reason for the season," and is "part of a larger campaign to encourage individuals to return to church during Advent ['the liturgical season . . . in which Christians prepare to celebrate the birth of Christ.']."

---

[4] Free Speech and Equal Protection concerns are often discussed together in cases about speech prohibitions, because the analysis is the same for both.  *Lehman*, 418 U.S. at 302; *Police Dept. of City of Chicago v. Mosley* ("*Mosley*"), 408 U.S. 92, 95, 102 (1972); *see also McGuire v. Reilly*, 260 F.3d 36, 49-50 (1st Cir. 2001) (finding that "the Act passes muster under the Equal Protection Clause for the same reasons that it passes muster under the First Amendment.") (citations omitted).  Indeed, Plaintiff makes the same arguments when asserting violations of both rights.

Mot. at 6-7.  The ad submitted to WMATA also features the silhouette of three shepherds and a bright star – referring to the biblical Nativity Scene and the Star of Bethlehem.  McFadden Decl., Exh. D.  It also directs viewers to find the "perfect gift" on its website, which says the "perfect gift" is Jesus Christ and God's love.  *Id.*; Weisel Decl., Exh. I, www.findtheperfectgift.org.  And the website encourages visitors to attend Christmas Mass, urges them to participate in traditional religious practices, and makes repeated references to God and Jesus.  *Id.*, Exh. J**.**  It is beyond dispute that Plaintiff's ad promotes a religion, religious practice, or religious belief, so it falls within Guideline 12.

By contrast, the Salvation Army ads do not promote religion, a religious practice, or a religious belief.  Bowersox Decl., Exh. E.  They make no reference to either Christianity or religion.  Instead, they promote charitable giving, each bearing the phrase in large type, "Give Hope Change Lives."  *Id.*  Below that, the ads contain language about how charity can affect recipients – e.g., helping young people avoid being "hungry and alone after school"; helping a family avoid being "cold and hungry" by providing "food on the table and a warm place to live"; and preventing homelessness so that a man does not have to "sleep[] on a grate this winter."  *Id.* Each ad also states: "GIVE TO THE SALVATION ARMY and give your neighbors food, shelter, and a second chance" and directs viewers to SalvationArmyNCA.org.  *Id.*  Nothing in that message promotes or opposes religion or any religious practice or belief.

Plaintiff nonetheless argues that the Salvation Army ads are religious because they reference charity and picture red kettles and reindeer.  But charity is not an inherently religious concept – even Plaintiff references "secular seasonal fund-raising campaigns" in its arguments. Mot. at 6.  And red kettles and reindeer are secular symbols.  *Allen v. Hickel*, 424 F.2d 944, 949 (D.C. Cir. 1970) (finding no Establishment Clause problem where federal funds were used to

build a crèche that "related to the celebration of a holiday season that has a clearly secular half; the visual demonstration as a whole included *definitely secular symbols of the secular holiday – reindeer,* the Yule log, the Christmas trees. . .") (emphasis added).

The website to which the Salvation Army advertisements refer contains no religious references besides the mission statement of the Salvation Army itself.  Weisel Decl., Exh. N, http://salvationarmynca.org/.  But the fact that the Salvation Army is a religious organization is not enough to make its advertisements, which have no religious content, religious.  Rejecting the Salvation Army's advertisements under Guideline 12 simply because the speaker is religious, though the content of the speech is not, would be unconstitutional.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("Prohibited . . . are restrictions distinguishing among different speakers, allowing speech by some but not others.") citing *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784 (1978).

The Salvation Army advertisements do not promote a religion, religious practice, or a religious belief.  Based on the actual content of the Salvation Army ads and website, there is nothing inconsistent in WMATA's decision to accept the Salvation Army ads while rejecting Plaintiff's ad.

Likewise, the CorePower Yoga ads do not promote or oppose a religion, religious practice, or religious belief.  Bowersox Decl., Exh. F.  The ads show people performing yoga with the tag line "MUSCLE + MANTRA."  *Id.*  Nothing in those advertisements promotes anything but fitness.  That yoga may have a spiritual origin does not make yoga a religion or religious practice.

Nor does CorePower Yoga's website provide any support for Plaintiff's contention.  Although the website is not actually mentioned on any of the ads, unlike Plaintiff's "find the

perfect gift" ad, there are no statements on the website that promote or oppose a religion,

religious practice, or religious belief.  E.g., Weisel Decl., Exhs. O, P.  CorePower Yoga's goals,

cited by Plaintiff (Mot. at 18) of "tak[ing] you on an inner journey of self-discovery,"

"discover[ing] your power and purpose," and "lead[ing] to the 'acknowledgement of one soul to

another'" do not promote religion.  "Self-discovery," personal "power and purpose," and "souls"

are not inherently religious concepts – as many secular self-help books demonstrate.  Therefore,

nothing in WMATA's acceptance of the CorePower Yoga advertisements is inconsistent with

Guideline 12.[5]

Plaintiff also cites *Mosley* to support its position that differential treatment of similar

speakers violates its Free Speech and Equal Protection rights.  *Mosley*, 408 U.S. at 102 (finding

the city ordinance which prohibited all picketing, except peaceful labor picketing, near a school

was unconstitutional).  However, that case is inapposite because WMATA applied its policy

consistently to all speakers.  *Lehman*, 418 U.S. at 300-01, 304 (finding no First Amendment or

Equal Protection violation where city rejected all political advertisements on its rapid transit

vehicles and "all candidates for political office [were] treated alike under the [defendant's]

policy.") (plurality).

Plaintiff also seems to contend that there is no rational basis for Guideline 12.  Mot. at 20

("Applying even the lowest level of constitutional scrutiny to WMATA's policy,. . . [t]here is no

---

[5] Further, even assuming, arguendo, that these advertisements were religious and should
have been rejected, WMATA's actions were still constitutional.  Courts will not invalidate
policies and their later application simply because of a handful of isolated mistakes in a highly
discretionary process.  *SMART*, 698 F.3d at 893 (finding that "reasonable people may disagree"
about discretionary determinations and that decision-makers applying these policies may
permissibly "at times make incorrect determinations within their limited discretion"); *Ridley v.
Mass. Bay Transp. Auth.*, 390 F.3d 65, 95 (1st Cir. 2004) (finding that, in administering an
advertising policy, transit authority "is also entitled to some discretion in determining which
advertisements are likely to alienate ridership and cost it revenue").

basis for this differing treatment.").  Under rational basis review, this Court must presume

WMATA's Guidelines are valid and Plaintiff must show that WMATA's policy and practices were

not rationally related to a legitimate government interest.  *United States Railroad Retirement

Board v. Fritz*, 449 U.S. 166, 174-175 (1980); *Vance v. Bradley*, 440 U.S. 93, 97 (1979); *New

Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

Plaintiff cannot do so.  The Supreme Court has already found that reasons for policies

like WMATA's – which limit the types of advertisements allowed on municipal transportation

vehicles – including "minimiz[ing] the chances of abuse [and] the appearance of favoritism"

survived rational basis review.  *Lehman*, 418 U.S. at 304 (plurality).  WMATA instituted its

policy for similar, legitimate reasons.  As detailed above, WMATA had four legitimate reasons

for instituting this policy: community and employee opposition, security risks, vandalism, and

administrative burdens.  WMATA's Guideline 12 was reasonably related to these reasons because

advertisements on WMATA's vehicles that either promoted or opposed religion exacerbated these

problems.  When WMATA published these types of advertisements, it risked being seen as

promoting the viewpoint in the advertisement, being the subject of threats and/or vandalism, and

increasing administrative costs.  Therefore, WMATA's Guideline 12 does not violate Plaintiff's

Free Speech and Equal Protection rights.

Plaintiff also argues that WMATA's allegedly inconsistent application of Guideline 12

violated the Establishment Clause.  However, Plaintiff never alleged that in its Complaint.

Therefore, Plaintiff has no Establishment Clause claim.  Fed. R. Civ. P. 8 ("A pleading that states

a claim for relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Even if this Court considers Plaintiff's Establishment Clause arguments, Plaintiff fails. Plaintiff contends that WMATA prefers some religious messages over others. By rejecting all religious or anti-religious messages, WMATA treats all religious messages identically. Plaintiff further argues that "[t]he prospect of WMATA officials and their outside counsel reviewing advertisements to determine whether shepherds are too religious, while red kettles and reindeer are permissible, is not one the First Amendment welcomes." Mot. at 19. But such common sense determinations have to be made. In *Allen*, the D.C. Circuit found no Establishment Clause problem where federal funds were used to erect a holiday crèche that contained "definitely secular symbols of the secular holiday – reindeer, the Yule log, the Christmas trees." *Allen*, 424 F.2d at 949. The Court distinguished these secular symbols from those that evoke the "spiritual meaning of Christmas" like a "life-sized Nativity Scene." *Id.*

So too here, where WMATA distinguished advertisements with secular symbols, red kettles and reindeer, and that did not promote religion from advertisements with the religious symbol of shepherds following the Star of Bethlehem – famously part of the Nativity story – which did promote religion. Therefore, Plaintiff's Establishment Clause arguments should be rejected because WMATA did not prefer some religious messages over others.

For all these reasons, Plaintiff's Free Speech, Equal Protection, and the Establishment Clause claims should all be rejected.

### C.     WMATA Did Not Violate Plaintiff's Free Exercise Rights, Because Guideline 12 Does Not Unconstitutionally Restrict Plaintiff's Free Exercise Of Religion.

Plaintiff contends that the adoption of Guideline 12 – a content-based restriction on ads that promote religion, religious practices, or religious beliefs – infringes on Plaintiff's free exercise of religion. Mot. at 20-22. It argues that Guideline 12 is subject to a heightened scrutiny analysis. *Id.* at 20-21. Plaintiff is wrong.

None of the cases on which Plaintiff relies involve nonpublic or limited purpose public forums. *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990), considered whether a law prohibiting usage of peyote infringed on the free exercise of religion by Native Americans who used peyote in religious practices; *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), considered the constitutionality of an ordinance prohibiting the ritual sacrifice of animals that was applied to prohibit plaintiff church's religious animal sacrifices; and *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), considered a state agency's policy of refusing to provide a grant to a church-operated school because of its religious nature. Plaintiff cites no authority to suggest those cases control a content-based, viewpoint-neutral restriction like Guideline 12.

Moreover, in *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642 (9th Cir. 2006), the Ninth Circuit held the opposite – holding that the traditional nonpublic forum test governed a government employee's claim that the refusal of his employer to permit him to hold prayer meetings in a conference room infringed on his free speech and free exercise rights. *Id.* at 653-55 (holding employer could reasonably permit use of conference room for birthday parties and baby showers, but not for religious prayers).

In any event, Plaintiff cannot establish that being denied access to WMATA's advertising space "in any substantive manner prohibit[s] Plaintiff[] from exercising [its] religion." *Little Pencil, LLC v. Lubbock Independent School District*, Civil Action No. 5:14-CV-014-C, 2014 WL 11531267, *12 (N.D. Tex. 2014), *aff'd*, 616 F. App'x, 180, 181 (5th Cir. 2015). In *Little Pencil*, the district court held that a school district's refusal to permit the plaintiff to place an ad for "Jesus Tattoo," a Christian evangelical organization, on a jumbotron screen at a high school football stadium did not violate the Free Exercise Clause. The Fifth Circuit agreed and, relying

on *Smith*, held that "there was no compulsion of, or punishment for, religious belief; nor was there a substantial burden placed upon religiously-motivated conduct."  616 F. App'x at 181.

Showing a substantial burden is a threshold requirement in Free Exercise cases.  *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384-85 (1990) *citing Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *Rigdon v. Perry*, 962 F. Supp. 150, 161 (D.D.C. 1997) ("The initial question is whether the defendants' prohibition . . . imposes a 'substantial burden' on [plaintiffs'] free exercise rights."); *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002). Because Plaintiff cannot make this initial showing, its Free Exercise Claim is meritless.

 Plaintiff also argues that because WMATA's "policy implicates both free speech and free exercise, it is a 'hybrid' restriction subject to heightened scrutiny" under *Smith*.  Mot. at 20-21; *Employment Div. Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 882 (1990).  However, in order to assert this heightened scrutiny, Plaintiff must have viable Free Exercise and Free Speech claims.  *Henderson v. Kennedy*, 253 F.3d 12, 19 (D.C. Cir. 2001) (rejecting plaintiff's "hybrid" claim because neither the plaintiff's Free Exercise or Free Speech claim was viable, reasoning that "in law as in mathematics zero plus zero equals zero."); *Mahoney v. D.C.*, 662 F. Supp. 2d 74, 95 n.12 (D.D.C. 2009), *aff'd sub nom, Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) (refusing to apply heightened scrutiny to plaintiff's "hybrid" Free Exercise and Free Speech claims because plaintiff did not have any independently viable claim).  Neither Plaintiff's Free Exercise nor its Free Speech claim is viable.  Therefore, this Court need not apply heightened scrutiny.

**D.      WMATA Did Not Violate the Religious Freedom Restoration Act ("RFRA"), Which Does Not Apply To It.**

1.      RFRA does not apply to WMATA.

Plaintiff's Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, claim fails because RFRA cannot constitutionally be applied to WMATA.   Because WMATA is an "instrumentality and agency," D.C. Code § 9-1107.01(4), of Maryland and Virginia, RFRA's application to WMATA is barred by *City of Boerne v. Flores*, 521 U.S. 507 (1997).

In *City of Boerne*, the Supreme Court held that RFRA was unconstitutional as applied to states because it exceeded Congress's enforcement powers under the Fourteenth Amendment.  *Id.* at 511.  The Court held that by legislatively overturning *Employment Division Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), Congress exceeded its enforcement powers because "[l]egislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause."  *City of Boerne*, 521 U.S. at 519.  Because RFRA attempted to make a "substantive change in constitutional protections," as opposed to a measure that remedied or prevented unconstitutional actions, RFRA was unconstitutional as applied to states.  *Id.* at 532.

Of particular concern to the Court was that RFRA was a "considerable congressional intrusion into the States' traditional prerogatives and general authority to regulate for the health and welfare of their citizens."  *Id.* at 534.  The Court reasoned that RFRA inflicted "substantial costs" on states, both by "imposing a heavy litigation burden on the States" and in "curtailing their traditional general regulatory power."  *Id.*  RFRA's coverage was "[s]weeping" for imposing strict scrutiny, "the most demanding test known to constitutional law," against every agency and official of state government whenever an objector could show a substantial burden on the free exercise of religion.  *Id.* at 532-34.  The Court struck down RFRA as applied to the states to "maintain . . . the federal balance."  *Id.* at 536.

Under *City of Boerne*, RFRA cannot apply to WMATA because RFRA would intrude on Maryland's and Virginia's traditional state prerogatives over transportation.  By the plain terms of the Interstate Compact creating WMATA, WMATA is "an instrumentality and agency of each of the signatory parties," the District of Columbia, Maryland, and Virginia.  *See* D.C. Code § 9-1107.01(4); Md. Transp. Code § 10-204; Va. Code Ann. § 33.2-3100.

Applying RFRA to WMATA would intrude into Maryland's and Virginia's sovereignty even though the District of Columbia is also a member of WMATA and is covered by RFRA.  42 U.S.C. § 2000bb–2(l) and (2) (RFRA applies to instrumentalities of "covered entit[ies]" including the District of Columbia).  Maryland and Virginia did not cede their state sovereignty by joining WMATA.  *Tarrant Reg'l Water Dist. v. Hermann*, 569 U.S. 614 (2013) ("The background notion that a State does not easily cede its sovereignty has informed our interpretation of interstate compacts.").

This Circuit has recognized that Maryland's and Virginia's state sovereignty was conferred upon WMATA.  *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 224 (D.C. Cir. 1986) (holding that Maryland and Virginia constitutionally conferred their Eleventh Amendment sovereign immunities upon WMATA).  The court reasoned that WMATA was not an independent political subdivision but rather a "regional instrumentality, as a common agency of each signatory party."  *Id.* at 225 (citing to WMATA Compact § 2).  WMATA was an instrumentality of Maryland and Virginia because "the practical result of a judgment against WMATA . . . would be payment from the treasuries of Maryland and Virginia[]" as "Maryland and Virginia have appropriated substantial funds" to WMATA through Maryland and Virginia's transportation laws.  *Id.* at 225-26.  WMATA was an instrumentality of Maryland and Virginia

also because they "exercise a high degree of control over WMATA" by "retain[ing] the power to void any WMATA rule or regulation." *Id.* at 227 (citing to WMATA Compact §76(e)).

Significantly, the court rejected plaintiff's argument that WMATA would lose immunities conferred to it by Maryland and Virginia merely because the District of Columbia was also a member of WMATA. *Id.* at 228 (rejecting the notion that "the sum is less than any of its parts so that when [Maryland's and Virginia's] immunities are added together, all immunities disappear[]" because to do so "would severely hamper the efficient operation and coordination of mass transportation in the Washington metropolitan area."). Just as with sovereign immunity, Maryland and Virginia conferred their state sovereignty over transportation to WMATA for purposes of immunity from RFRA. Because Maryland and Virginia preserved their traditional state prerogatives over transportation, applying RFRA to WMATA would be unconstitutional under *City of Boerne*. Therefore, Plaintiff cannot succeed on its RFRA claim because RFRA cannot constitutionally apply to WMATA.

> 2. Even if RFRA applies to WMATA, Plaintiff cannot show that Guideline 12 substantially burdens Plaintiff's exercise of religion.

Even if RFRA applied here, Plaintiff's RFRA claim fails on the merits because Plaintiff cannot meet its burden to show that its exercise of religion has been "substantially burdened." 42 U.S.C. § 2000bb-1(a). Plaintiff bears the initial burden of showing that Guideline 12 substantially burdens its exercise of religion. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015); *Wilson v. James*, 139 F. Supp. 3d 410, 424 (D.D.C. 2015), *aff'd*, No. 15-5338, 2016 WL 3043746 (D.C. Cir. May 17, 2016), *cert denied*, 137 S. Ct. 695 (2017). A substantial burden exists only when government action imposes "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (internal quotation omitted) (finding no substantial burden for an RFRA claim because the government's

extraction, analysis, and storage of plaintiff's DNA information did not "call for [plaintiff] to modify his religious behavior in any way [and] involve[d] no action or forbearance on his part" even though the practices may have "offended [plaintiff's] religious beliefs."). To satisfy its burden, Plaintiff must allege either that Guideline 12 (1) "force[d] [the Plaintiff] to engage in conduct that [its] religion forbids," *Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C. Cir. 2001), (2) "prevent[ed] [it] from engaging in conduct [its] religion requires," *id.*, or (3) forced it "to choose between following the precepts of [its] religion and forfeiting benefits," *Kaemmerling*, 553 F.3d at 678.

Plaintiff cannot succeed on the first theory because the WMATA does not force Plaintiff to do anything—WMATA merely prohibits advertisements, like Plaintiff's, that promote or oppose any religion.

Plaintiff cannot succeed on the second theory because Plaintiff has not shown that WMATA prevented it from engaging in any "conduct [its] religion requires." *Henderson*, 253 F.3d at 16. In *Henderson v. Kennedy*, the D.C. Circuit held that a regulation prohibiting t-shirt sales in the national mall did not substantially burden individuals seeking to share their religious message because the plaintiffs did not allege "that selling t-shirts in that particular area of the District of Columbia is central to the exercise of their religion." *Id.* Similarly, in *Mahoney v. Doe*, the D.C. Circuit found that a regulation prohibiting chalk on the sidewalk in front of the White House did not impose a substantial burden because the plaintiff did not allege that his religion required "chalk [as] the exclusive medium through which [he] could express his religious views." *Mahoney*, 642 F.3d at 1120-21; *see also Payden-Travers v. Talkin*, No. 13-1735 (CKK), 2017 WL 2371116, at *5-6 (D.D.C. May 31, 2017) (holding that there was no substantial burden in preventing plaintiffs from holding vigils or demonstrating on the Supreme Court plaza

because the regulation "restrict[s] only one of a multitude of means by which Plaintiffs could engage in their religious motivated activity" and "[p]laintiffs have not alleged [nor could they allege] that this is the only way or only place Plaintiffs could pursue their religious convictions.").

Plaintiff cannot establish that it was substantial burdened for the same reason. Plaintiff has not alleged and cannot allege or prove that its religion requires displaying advertisements on WMATA's buses promoting the season of Advent.

Plaintiff cannot succeed on the third theory because Plaintiff has not shown that WMATA has forced it to forfeit an important benefit by imposing "'substantial pressure on [it] to modify [its religious] behavior.'" *Kaemmerling*, 553 F.3d at 678 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981)).

Substantial pressure exists when the plaintiff loses a benefit flowing from an "otherwise available public program" such as valuable unemployment benefits, *Thomas*, 450 U.S. at 718, *Sherbert v. Verner*, 374 U.S. 398, 403 (1963), or paid federal employment, *Singh v. McHugh*, No. 14-1906, 2016 WL 2770874 (D.D.C. May 13, 2016) (plaintiff forced to choose between position in the Reserve Officers' Training Corps and acting inconsistently with his religion). Not every loss of a benefit is of sufficient "order or magnitude" to amount to substantial pressure. *Barker v. Conroy*, No. 16-850, 2017 WL 4563165, at *14 (D.D.C. Oct. 11, 2017) (noting that previous RFRA cases have only included "distinct government benefits from 'otherwise available public programs' such as unemployment benefits" . . . and holding that the "opportunity to serve as a guest chaplain is not the type of benefit covered by RFRA.") (quoting *Thomas*, 450 U.S. at 718)); *see also Johnson v. Robison*, 415 U.S. 361, 385-86 (1974) (forgoing veterans' educational

benefits imposed only "incidental burden upon free exercise of religion" and thus was not sufficient in "order or magnitude" to be actionable).

Plaintiff has not lost any government benefit, e.g., unemployment benefits. Plaintiff is not required to make any choice that risks anything close to the loss of income or employment. Plaintiff can continue to promote its religion throughout the season of Advent in person, social media, and online. Plaintiff is only prohibited from displaying an ad promoting its religion on WMATA's buses. Thus, Plaintiff is not under substantial pressure to modify its religious beliefs by WMATA not displaying its ad.

In any event, "[a]n inconsequential or de minimis burden on religious practice," such as when the government merely restricts "one of a multitude of means" by which the plaintiffs could engage in their religious exercise, does not suffice. *Payden-Travers*, 2017 WL 2371116, at *5-6; *Mahoney v. Doe*, 642 F.3d at 1121. Plaintiff retains and has successfully pursued a "multitude of means" in promoting the season of Advent. Plaintiff has created advertisements in "several formats" which will be displayed in public spaces, social media, and on the Internet. Complaint, ¶11. Plaintiff has purchased advertising spaces in multiple bus shelters for the "Find the Perfect Gift" campaign from Clear Channel Outdoor. Complaint, ¶12; Mot. at 8. Clear Channel Outdoor, which has no relationship with WMATA or with OUTFRONT Media, will display billboards in its bus shelters including Plaintiff's ad, along with a quotation from the Book of Luke. Complaint, ¶12; Bowersox Decl., ¶ 27. Therefore, Guideline 12 does not substantially burden Plaintiff's religious exercise.

## III.   PLAINTIFF HAS NOT SHOWN IT WILL SUFFER ANY IRREPARABLE HARM IF A MANDATORY INJUNCTION DOES NOT ISSUE.

Because Plaintiff cannot establish a likelihood of success on the merits, whether it would suffer irreparable harm ultimately is irrelevant. *Navistar*, 2011 WL 3743732, at *3-4 (party

seeking injunction must establish a likelihood of success).  In any event, Plaintiff has failed to prove it will suffer any irreparable harm.

The alleged impairment of Plaintiff's rights is its inability to advertise its website on WMATA buses.  But Plaintiff has many other advertising options.  Its Complaint states that Plaintiff has created ads for display "in public spaces, on social media, and on the Internet." Complaint, ¶ 11.  OUTFRONT proposed wall units in several locations throughout the city. McFadden Decl., Exh. G.  Plaintiff also admits that it is running its "find the perfect gift campaign" in parish bulletins and on bus shelters operated by Clear Channel Outdoor.  Mot. at 8.

"[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits."  *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir 1989); *see also Rushia v. Town of Ashburnham*, 701 F.2d 7, 10 (1st Cir. 1983).  Rather the plaintiffs must show "'a chilling effect on free expression.'"  *Hohe*, 868 F.2d at 73 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965)); *accord Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) (quoting *Hohe*).  It is "purposeful unconstitutional suppression of speech [that] constitutes irreparable harm for preliminary injunction purposes."  *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (citing *Ebel v. City of Corona*, 698 F.2d 390 (9th Cir. 1983)).  It is the "direct penalization, as opposed to incidental inhibition, of First Amendment rights [that] constitutes irreparable injury."  *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983).

In *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016), which involved facts like ours, a court found irreparable harm from a First Amendment violation insufficient to warrant injunctive relief.  There, the plaintiff gun

store owners sought to enjoin restrictions on handgun advertising as a violation of their First

Amendment rights.  The district court found that the plaintiffs demonstrated likelihood of

success and that the infringement of their First Amendment rights constituted irreparable harm.

*Id.* at 1191-92.  But the court concluded that the harm carried "minimal weight" in the injunctive

relief analysis, because the plaintiffs had other available means to advertise that they sold

handguns and could do so in other media.  *Id.* at 1193.  On appeal, the Ninth Circuit affirmed,

finding that "the magnitude of this potential harm [was] minimal due to the commercial nature of

the speech and limited scope of the restriction." *Tracy*, 637 F. App'x at 402.

Similarly, even if Plaintiff could show a likelihood of success on the merits of its

constitutional claims, Plaintiff has not shown it will suffer any irreparable harm without

injunctive relief nor that it does not have adequate alternative sites for its ad.

## IV.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF.

As discussed above, if Plaintiff can prove any harm from being forced to advertise its

website in other media and locations, such harm would be minimal at best.

By contrast, if forced to run Plaintiff's ads, WMATA will be forced to run all ads

promoting or opposing religion, religious practices, and religious beliefs.  That would nullify its

decision to close its advertising space to such ads to avoid controversy and the administrative

burden that comes from such ads.  And contrary to Plaintiff's bald assertion, being required to

run such religious advertisements poses a risk of harm to WMATA, its employees, and its

customers.  Beyond the potential for offense, or at least vandalism, there is a legitimate concern

that certain pro- or anti-religion ads could cause violence, as occurred with the anti-Islam cartoon

contest that resulted in the creation of the proposed ad at issue in *AFDI v. WMATA*.  Bowersox

Decl., ¶ 11.  These factors weigh against the minimal intrusion into Plaintiff's desire to advertise

its religious ads and provide further reason to deny the requested TRO and preliminary

injunction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court deny

Plaintiff's motion for a TRO and preliminary injunction.


Date:   December 4, 2017                    Respectfully submitted,

                                            AKIN GUMP STRAUSS HAUER & FELD LLP


                                            By:   _s/ Rex S. Heinke_____
                                                  Rex S. Heinke
                                                  Jessica M. Weisel
                                                  1999 Avenue of the Stars, Suite 600
                                                  Los Angeles, California 90067
                                                  Phone: (310) 229-1000
                                                  Fax: (310) 229-1001

                                                  Anthony T. Pierce
                                                  James E. Tysse
                                                  1333 New Hampshire Ave., N.W.
                                                  Washington, D.C., 20036
                                                  Telephone: (202) 887-4000
                                                  Facsimile: (202) 887-4288

                                                  Attorneys for Defendants