**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Archdiocese of Washington, *et al.*<br><br>       Plaintiffs,<br><br>  vs.<br><br>Washington Metropolitan Area Transit Authority, *et al.*,<br><br>       Defendants. | Case No.: 1:17-cv-02554-ABJ |

**BRIEF AMICI CURIAE OF ETHICS AND PUBLIC POLICY CENTER AND FIRST LIBERTY INSTITUTE IN SUPPORT OF**
**PLAINTIFFS ARCHDIOCESE OF WASHINGTON *ET AL.***

Shannen W. Coffin
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-6255
Facsimile: (202) 429-3902
scoffin@steptoe.com

OF COUNSEL:
Joseph Bingham (DC Bar # 1015329)
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
Facsimile: (972) 423-6162
jbingham@firstliberty.org

*Attorneys for Amici Curiae Ethics and Public Policy Center and First Liberty Institute*

November 30, 2017

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................................ iii
INTRODUCTION ...........................................................................................................................1
INTEREST OF THE AMICI ..........................................................................................................3
ARGUMENT ...................................................................................................................................4
I.   WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT
     CONSTITUTES IMPERMISSIBLE VIEWPOINT DISCRIMINATION ..........................4
II.  WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT
     INDEPENDENTLY VIOLATES THE FREE EXERCISE CLAUSE ................................8
CONCLUSION ..............................................................................................................................10


## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................................ iii
INTRODUCTION ...........................................................................................................................1
INTEREST OF THE AMICI ..........................................................................................................3
ARGUMENT ...................................................................................................................................4
I.   WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT
     CONSTITUTES IMPERMISSIBLE VIEWPOINT DISCRIMINATION ..........................4
II.  WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT
     INDEPENDENTLY VIOLATES THE FREE EXERCISE CLAUSE ................................8
CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burwell v. Hobby Lobby Stores, Inc.*,
    134 S. Ct. 2751 (2014) ................................................................................................ 9

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940) .................................................................................................... 2

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993) ................................................................................................ 8, 9

*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,
    473 U.S. 788 (1985) .................................................................................................... 7

*Employment Division v. Smith*,
    494 U.S. 872 (1990) .................................................................................................... 8

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98 (2001) ............................................................................................. passim

*Lamb's Chapel v. Center Moriches Union Free School Dist.*,
    508 U.S. 384 (1993) ............................................................................................ 3, 4, 5

*Matal v. Tam*,
    582 U.S. __, 137 S. Ct. 1744 (2017) .......................................................................... 2

*Rosenberger v. Rector and Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ......................................................................................... 3, 4, 6, 7

*Texas v. Johnson*,
    491 U.S 397 (1989) ..................................................................................................... 7

**Other Authorities**

2 The Writings of James Madison (Gaillard Hunt ed. 1901) ............................................. 2

## **CORPORATE DISCLOSURE STATEMENT**

Amici curiae are both non-profit organizations. They have no parent corporations and do not issue stock.

**INTRODUCTION**

As part of its purported effort to promote civic harmony and to prevent discord and public unrest, the Washington Metropolitan Area Transit Authority has found it necessary to suppress the Archdiocese of Washington's modest efforts to remind locals of the true meaning of the holiday season. Applying its advertising guidelines, which prohibit advertisements "that promote or oppose any religion, religious practice or belief,"[1] WMATA has decreed that the mere whisper of religiosity on a proposed advertisement by the Archdiocese— the depiction of three shepherds under a bright star with the inviting message "Find the Perfect Gift"— so threatens the public order that commuters caught in the snarl of everyday traffic must be protected from its message of hope and Christian charity.

The Archdiocese sought to place the advertisement as part of its Advent campaign to invite people to better themselves by attending Christmas Mass, to live the virtue of charity, and to realize hope in Jesus Christ's birth. Any one of these messages would have been permissible if it expressed a commercial, rather than religious, viewpoint. WMATA allows, for instance, advertisements for a yoga clinic seeking to help D.C. consumers better themselves through exercise and meditation and for a range of charities seeking support to cure diseases or help the poor in a purely secular manner. *See* Pl.'s Mem. In Support of Motion for Temporary Restraining Order and Preliminary Injunction at 17-18.

WMATA objects not to the specific words of the Archdiocese's message, but to the *religious viewpoint* that accompanies the speaker's message. The phrase proposed by the Archdiocese—"Find the Perfect Gift"— would be perfectly acceptable under WMATA's advertising guidelines if only it were accompanied by an Amazon.com logo.

---

[1] *See* WMATA Guidelines Governing Commercial Advertising No. 12, available at https://www.wmata.com/about/records/upload/Advertising_Guidelines.pdf.

Our Country's Founders warned against the dangers and futility of government efforts to bring people together by pushing religious viewpoints out of the public arena.  In his celebrated 1785 *Memorial and Remonstrance against Religious Assessments*, James Madison observed that "[t]orrents of blood have been spilt in the old world, by vain attempts of the secular arm, to extinguish Religious discord, by proscribing all differences in Religious opinion." 2 The Writings of James Madison 183, 189 (Gaillard Hunt ed. 1901).  Madison noted more hopefully, however, that the time has "revealed the true remedy":

> Every relaxation of narrow and rigorous policy, wherever it has been tried has been found to assuage the disease.  The American Theatre has exhibited proofs that equal and compleat liberty, if it does not wholly eradicate it, sufficiently destroys its malignant influence on the health and prosperity of the State.  If with the salutary effects of this system under our own eyes, we begin to contract the bounds of Religious freedom, we know no name that will too severely reproach our folly.  [*Id.*]

Consistent with Madison's advice, the Supreme Court has repeatedly recognized that the suppression of religious viewpoints cannot be justified by even a benevolent concern for promoting civic harmony.  Justice Alito recently summarized the Supreme Court's long resistance to the notion that the government has an interest in preventing speech expressing ideas that offend, noting that "that idea strikes at the heart of the First Amendment." *Matal v. Tam*, 582 U.S. __, 137 S. Ct. 1744, 1764 (2017) (plurality).  This is especially true "in the realm of religious faith, and in that of political belief," where "sharp differences arise." *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940).  "In both fields the tenets of one man may seem the rankest error to his neighbor." *Id.* at 310.  Nevertheless, the "people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy." *Id.*

Accordingly, where, as here, the government seeks to suppress as noxious otherwise permissible speech because the speaker voices a religious perspective, the Supreme Court has repeatedly held that such religious viewpoint discrimination cannot be justified by *any* government interest and is virtually *per se* unlawful.  *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 111–12 (2001); *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993). WMATA's refusal to permit the Archdiocese to post its otherwise unobjectionable advertisement was based entirely on the religious viewpoint behind the Archdiocese's campaign.  WMATA's application of its advertising guidelines to the Archdiocese's "Find the Perfect Gift" advertisement constitutes, among other things, invidious viewpoint discrimination in violation of the Free Speech Clause and an unlawful imposition on the Archdiocese's religious liberties under the First Amendment's Free Exercise Clause.  WMATA's decision cannot stand.

## INTEREST OF THE AMICI

*Amici curiae* Ethics and Public Policy Center ("EPPC") and First Liberty Institute respectfully submit this brief in support of the Archdiocese of Washington to share their views on the important constitutional values underlying the Archdiocese's complaint.[2]

EPPC is a nonprofit, ecumenical research institution dedicated to defending American ideals and to applying the Judeo-Christian moral tradition to critical issues of public policy.  A strong commitment to a robust understanding of religious liberty pervades EPPC's work.

First Liberty Institute is a non-profit, public interest law firm dedicated to the preservation of America's religious liberty.  First Liberty Institute provides pro bono legal

---

[2] Pursuant to LCvR 7(o) and Fed. R. App. P. 29(a)(4)(E), amici state that no party's counsel authored this brief in whole or in part; that no party or its counsel contributed money that was intended to fund the preparation or submission of this brief; and no person other than amicus or its counsel contributed money to fund this brief.

representation to institutions and individuals of all faiths, including Catholic and Protestant institutions, synagogues and Jewish schools, faith-based universities, Native American religious practitioners, an Islamic cemetery, the Falun Gong, and others.  First Liberty Institute often appears in court, as counsel and as amicus curiae, in defense of vital First Amendment freedoms.

## ARGUMENT

### I. WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT CONSTITUTES IMPERMISSIBLE VIEWPOINT DISCRIMINATION

The fundamental problem with WMATA's decision to reject the Archdiocese's "Find the Perfect Gift" advertisement is that the decision was based on the religious viewpoint of the speaker.  WMATA would not have objected to a "Find the Perfect Gift" Christmas campaign had it sought to hock diamond necklaces or luxury sedans.  Nor would it have balked at similar self-improvement or charity campaign advertisements placed by purely secular advertisers.[3]

The First Amendment flatly prohibits the government from choosing among speakers on the basis of their viewpoint.  The government may not "discriminate against speech on the basis of its viewpoint."  *Rosenberger*, 515 U.S. at 829.  In a series of decisions involving religious speech, the Supreme Court has repeatedly held that the government may not deny access to government property or other benefits to speakers on the basis of their religious viewpoint.  *Id; see also Lamb's Chapel*, 508 U.S. at 393-94; *Good News Club.*, 533 U.S. at 111.

*Lamb's Chapel* held that a school district engaged in impermissible viewpoint discrimination in denying access to a Christian group to use school facilities after hours, where those facilities were otherwise open to community groups for a variety of civic purposes.  508

---

[3] Indeed, despite the mystical Hindu origins of yoga (see, for example, Pantajali's *Yoga Sutras*), WMATA apparently permits advertisements for yoga instruction, suggesting that, in practice, even some religiously-based messages are permissible, provided they are not conveying a Catholic viewpoint.  *See also* McFadden Decl. ¶ 13.

U.S. at 393. The school district rejected the group's request to show a film series addressing various parenting issues because it did so from a Christian perspective. The Court concluded that it "discriminates on the basis of viewpoint to permit school property to be used for the presentation of all views about family issues and childrearing except those dealing with the subject matter from a religious standpoint." *Id.* at 393.

In *Good News Club*, the Court again invalidated a school district's denial of after-school access to a Christian group that sought to teach morals from a Christian perspective. 533 U.S. at 108-09. Because the school otherwise permitted its facilities to be used for the teaching of morals and character, it engaged in impermissible viewpoint discrimination in denying the Christian group's request solely because it sought to do so from a religious perspective, using Bible stories and the religiously oriented songs. *Id.* The Court saw "no logical difference in kind between the invocation of Christianity by the Club and the invocation of teamwork, loyalty or patriotism by other associations to provide a foundation for their lessons." *Id.* at 111.

WMATA's advertising guidelines, especially as applied to the Archdiocese's proposed advertisement campaign, discriminate on the basis of viewpoint in the same way as the school decisions invalidated in *Lamb's Chapel* and *Good News Club*. WMATA targets religious viewpoint in at least two ways. First, WMATA *does permit* mention of the Christmas holiday season, so long it is a secularized Christmas message devoid of religious viewpoint. As explained by the Archdiocese Secretary for Communications Edward McFadden, WMATA's agent explained to him that the same advertisement might be permissible if it "had an explicitly commercial objective, such as selling tickets. . . . But an advertisement that referred, as does the Archdiocese's advertisement, to 'Finding the Perfect Gift,' *without asking for business*, was impermissible according to WMATA." McFadden Decl., Pl.'s Ex. 1, ¶ 13 (emphasis added).

5

The Archdiocese's advertisement was impermissible not because it referred to Christmas—as an advertisement that displayed presents under a Christmas tree would be permitted if placed by Macy's—but because it sought to emphasize that Christ is the reason for the season.

Second, WMATA's decision discriminated against messages of self-improvement or charity when spoken from a religious viewpoint. Improving yourself through yoga or a Dale Carnegie course is a welcome message on the side of Metro buses. But self-improvement by receiving the sacraments during Advent or studying the Talmud is not. Encouraging commuters to give to the poor because it is a civic virtue is permissible, but encouraging those same commuters to give to the poor because it is a *Christian* (or Jewish or Muslim) virtue is not. *Good News Club* plainly prohibits WMATA from prohibiting an otherwise permissible message of self-improvement or charity simply because of the religious viewpoint of the message.

One can easily imagine, under the WMATA guidelines, an advertisement for the Kennedy Center's recent run of the irreverent "The Book of Mormon" musical by Matt Stone and Trey Parker of *South Park* fame. Advertising a musical that mocks a faith would be acceptable when done from an artistic viewpoint. But an advertisement by the Church of Jesus Christ of Latter-Day Saints inviting patrons of the musical to learn the teachings of the actual Book of Mormon would be verboten simply because of its religious viewpoint.

WMATA's blatant religious viewpoint discrimination is not saved by the fact that *all religious* viewpoints are allegedly prohibited (although as the Archdiocese correctly argues, there is some question whether the regulations are applied evenly in this respect). *Rosenberger* rejected the notion that the exclusion of an entire category of religious viewpoints avoids a finding of viewpoint discrimination: "It is objectionable to exclude both a theistic and atheistic perspective on the debate as it is to exclude one, the other, or yet another political, economic, or

6

social viewpoint." 515 U.S. at 831. The notion that "debate is not skewed so long as multiple voices are silenced is simply wrong: the debate is skewed in multiple ways." *Id* at 831-32.[4]

"If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S 397, 414 (1989). Here, it is the mere possibility that someone may be offended by a religious perspective on the topic of Christmas that led WMATA to decline to run the Archdiocese's advertisement.[5] But the "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. WMATA's viewpoint discrimination cannot be sustained.

---

[4] WMATA will likely seek to argue that it is entitled to broad deference because its buses are not a public forum. But forum analysis is irrelevant to the Archdiocese's claim of impermissible viewpoint discrimination. Even in limited public fora or non-public fora, the government cannot discriminate against speech on the basis of viewpoint. *See Rosenberger*, 515 U.S. at 829-30 (viewpoint discrimination is "presumed impermissible when directed against speech otherwise within the [limited public] forum's limitations); *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc*., 473 U.S. 788, 806 (1985) (in non-public fora, limitations on speech must be viewpoint neutral).

[5] Unlike the government defendants in *Rosenberger* and *Good News Club,* WMATA cannot plausibly argue that its purpose here was to avoid an Establishment Clause violation. The government defendants in those cases argued, in varying degrees and ultimately without success, that denying access to student funding or after-school access to religious organizations was necessary to avoid concerns for state-sponsored religion. Here, however, the Archdiocese is not seeking some free government benefit; it is merely seeking to buy advertising on the same neutral terms as other advertisers. In addition, WMATA's Advertising Guideline 8 explicitly prohibits any suggestion in an advertisement that WMATA endorses the message therein, and the Archdiocese's proposed ad complied fully with that requirement.

## II. WMATA'S REJECTION OF THE ARCHDIOCESE'S ADVERTISEMENT INDEPENDENTLY VIOLATES THE FREE EXERCISE CLAUSE

For similar reasons, WMATA advertising guidelines also violate the Free Exercise Clause. The "protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993). A "law targeting religious beliefs as such is never permissible." *Id.*

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral" toward religion. *Id.* at 533. Thus, it cannot fall within the category of generally applicable laws that only incidentally burden religion that the Supreme Court sustained in *Employment Division v. Smith*, 494 U.S. 872 (1990).

WMATA's guidelines here are neither neutral nor generally applicable. They facially manifest the discriminatory purpose of penalizing "some or all religious beliefs," and have the effect of "regulat[ing] or prohibit[ing] conduct because it is religiously motivated." *Id.* at 532. "The minimum requirement of neutrality is that a law not discriminate on its face." *Id.* at 533. WMATA's policies fail to meet even this minimum requirement. The guidelines categorically prohibit "[a]dvertisements that promote or oppose any religion, religious practice or belief." Guideline No. 12. The guidelines do not merely *incidentally* burden religion; they target it.

Nor are the guidelines neutral or generally applicable *in effect*. Their prohibition on religious advertisement is both overinclusive and underinclusive. *See Lukumi*, 508 U.S. at 534 (targeting "religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."). If a restriction is crafted such that it creates a "religious gerrymander" that burdens religious conduct but not equivalent secular conduct, it is not neutral. *Id.* at 534, 544.

8

As suggested by Edward McFadden's declaration, the Guidelines would prevent the Archdiocese from advertising the time and place of a religious concert if it were free and open to all. *See* McFadden Decl., Pl.'s Ex. 1, ¶ 13. At the same time, a department store could advertise a similar free holiday concert without any objection because its broader purpose is mercenary. Yet the two advertisements seek to do basically the same thing—invite people to do business. The only difference is that the Archdiocese's "business" is saving souls, not selling garish holiday sweaters. Such discriminatory effects are "strong evidence" that discrimination against religious perspectives is its true object. *See Lukumi*, 508 U.S. at 535.

Accordingly, under the Free Exercise Clause, the guidelines "must undergo the most rigorous of scrutiny." *Id.* at 546. Strict scrutiny is satisfied only where the restriction at issue "advance[s] interests of the highest order" and is "narrowly tailored in pursuit of those interests." *Id.* Defendants cannot make either showing. The government's interest in promoting civic harmony and preventing offense is far from compelling, especially where the government seeks to satisfy the interest by targeting religious expression. *See supra,* 1-2.

In any event, the guidelines' categorical ban on religious advertisements is not narrowly tailored to achieve that questionable interest. "A law that . . . advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. As the Supreme Court recently observed in a similar context, "[strict scrutiny] requires us to 'loo[k] beyond broadly formulated interests' and . . . look to the marginal interest in enforcing the law in particular cases." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014) (citation omitted). The Archdiocese's rejected advertisements present no risk of the civil discord WMATA presumably seeks to avoid, and WMATA could limit other potentially divisive issue-based advocacy without curtailing the ability of churches to

advertise on an equal footing with commercial establishments. As a result, the guidelines' categorical prohibition on religious advertising violates the Free Exercise Clause.

## CONCLUSION

For the reasons stated herein, *amici curiae* respectfully request that the Court grant the Plaintiff's motion for injunctive relief.

Respectfully submitted,

/s/ Shannen W. Coffin
Shannen W. Coffin (DC Bar # 449197)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Ave., NW
Washington, D.C. 20036
Telephone: (202) 429-6255
Facsimile: (202) 429-3902
scoffin@steptoe.com

OF COUNSEL:
Joseph Bingham (DC Bar # 1015329)
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: (972) 941-4444
Facsimile: (972) 423-6162
jbingham@firstliberty.org

*Attorneys for Amici Curiae Ethics and Public Policy Center and First Liberty Institute*

## **CERTIFICATE OF SERVICE**

I, Shannen W. Coffin, hereby certify that on November 30, 2017, I caused a true and correct copy of a copy of the foregoing document to be served on all parties of record via the CM/ECF system.

/s/   Shannen W. Coffin
Shannen W. Coffin (DC Bar # 449197)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Ave., NW
Washington, D.C. 20036
Telephone: (202) 429-6255
Facsimile: (202) 429-3902
scoffin@steptoe.com